UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

OCT 2 0 2004

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

| | |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC., and BUILDING OFFICIALS AND CODE ADMINISTRATORS INTERNATIONAL, INC. | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 02C 5610 ) |
| v. | ) Judge Rebecca R. Pallmeyer ) |
| NATIONAL FIRE PROTECTION ASSOCIATION, INC. | ) ) ) |
| Defendant. | ) ) |

**DOCKETED**

NOV 2 2 2004

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT AND REQUEST FOR INJUNCTION

#### PRELIMINARY STATEMENT

In this copyright action, Plaintiffs International Code Council, Inc. ("ICC") and Building Officials and Code Administrators International, Inc. ("BOCA") (collectively, "ICC") allege that Defendant National Fire Protection Association, Inc. ("NFPA") unlawfully has copied numerous passages from ICC's International Building Code 2000 ("IBC 2000") in order to publish a competing code known as the NFPA 5000 Building Construction and Safety Code ("NFPA 5000"). The text of the IBC 2000 is based in part upon building codes previously published by three model code organizations that later were reorganized into ICC in January 2003. Despite the fact that ICC now owns the copyrights in each of these "legacy" works, NFPA has asserted that ICC cannot claim infringement of text in the IBC 2000 that derives from these sources because ICC has not referenced them in its Complaint with sufficient specificity. Although ICC believes that its Complaint adequately describes the nature and scope of its copyright claims, it

seeks to ensure that its claims are not limited on the basis of a purported technicality and to ensure that the record in this case contains no ambiguity as to what claims it asserts. Accordingly, in the event that the Court believes an amendment is indeed necessary, ICC respectfully asks that it grant the accompanying Motion and permit ICC to amend its Complaint.

### BRIEF OVERVIEW OF THE FACTS

ICC was formed in 1994 to facilitate cooperation among three existing regional code-writing organizations: BOCA, the International Conference of Building Officials ("ICBO"), and the Southern Building Code Congress International, Inc. ("SBCCI"). For decades prior to the publication of the IBC 2000, each of these three organizations produced and distributed its own set of model codes primarily in different regions of the country. Beginning in 1994, these organizations, in affiliation with ICC, began developing a single set of comprehensive national model codes. Among the codes developed through this collaboration was the IBC 2000, which was published in March 2000.

The development of the IBC 2000 relied heavily upon model building codes previously published by BOCA, ICBO, and SBCCI -- specifically, BOCA's National Building Code, SBCCI's Standard Building Code, and ICBO's Uniform Building Code. A substantial amount of text in the IBC 2000 is based upon corresponding provisions in these legacy works. In many instances, text from one or more of these earlier codes was directly adopted into the IBC 2000. Elsewhere, the IBC 2000 text is an updated and/or modified version of language in these sources.

BOCA, ICBO, and SBCCI transferred the ownership of the copyrights in their respective building codes to ICC. Thus, ICC owns the copyright in all new language in the IBC 2000, as well as the copyrights in the language in preexisting model codes upon which much of the IBC 2000's text is based. In addition, ICC owns copyrights in the three IBC 2000 drafts that were

2

published and distributed in 1997 and 1998 -- the Working Draft, the First Draft, and the Final

Draft -- from which much language in the IBC 2000 comes.

## THE CURRENT COMPLAINT

ICC believes that its current Complaint fully describes, and asserts infringement of, all of

the copyright interests which it seeks to protect in this case. The Complaint plainly states that

ICC owns "all rights and interests in 'International Building Code - 2000.'" Compl. ¶ 13. This

Code is referred to by ¶ 13 as the "Work." Paragraphs 14-18 assert that Defendant NFPA,

without ICC's authorization, has knowingly and willfully copied and infringed upon the "Work,"

to ICC's harm. The Complaint's Prayer for Relief repeatedly seeks redress as to ICC's

"copyrights in 'International Building Code - 2000.'" *Id.* ¶¶ A-D (emphasis added). Moreover,

the copyright registration for the IBC 2000, which is attached as an exhibit to the Complaint,

plainly identifies each specific preexisting work upon which the IBC 2000 is based. *See*

Certificate of Registration No. TX 5-156-896, § 6a.

The Complaint thus clearly puts NFPA on notice of the nature and scope of ICC's claims

and complies fully with all federal pleading requirements. Indeed, NFPA acknowledged the

nature and scope of ICC's contentions in its Counterclaim when it stated: "ICC asserts ownership

of all rights and interests in 'International Building Code - 2000' under the provisions of 17

U.S.C. 101 *et seq.*" (emphasis added). Answer, Affirmative Defenses & Countercl. ¶ 6.

Nevertheless, NFPA recently has adopted a different stance. On July 20, 2004, in its

Memorandum in Support of its Motion to Compel, NFPA wrongly contended that "...only the

new textual material in the IBC 2000 is asserted in this litigation" and that the "...preexisting

3

works…have not been asserted against the NFPA 5000." NFPA's Mem. Supp. Mot. Compel at 8-9.[1]

In ICC's view, the existing Complaint fully satisfies the liberal pleading requirements of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2) requires that a pleading setting forth a claim for relief contain merely a "short and plain statement of the claim showing that the pleader is entitled to relief…." Rule 8(f) provides that "[a]ll pleadings shall be construed as to do substantial justice." Pursuant to these rules, courts generally construe pleadings liberally and attempt to resolve ambiguities in favor of the pleader. *See* Wright & Miller, *Federal Practice and Procedure: Civil 2d* §§ 1215, 1286. While ICC's Complaint does not identify the copyright registration numbers for the preexisting works that are listed in the IBC 2000 registration statement attached to the Complaint, this omission is precisely the type of technicality that should not defeat an otherwise unambiguous pleading such as ICC's. As the Supreme Court has emphasized: "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).[2]

---

[1]    Moreover, at an August 12, 2004, hearing before this Court, NFPA's counsel asserted: "The first we heard of this now that we are going to be litigating six other codes was, very candidly, your Honor, was on Wednesday." *See* Transcript of Proceedings, Aug. 12, 2004, at 20 (attached as Exhibit A). This statement cannot be credited, given, *e.g.*, NFPA's assertion in its February 2003 Counterclaim as to the nature and scope of ICC's ownership interests, NFPA's July 6, 2004 30(b)(6) Deposition Notice (Exhibit B), which stated that NFPA would inquire into the development of the legacy codes, and the attached July 16, 2004 letter from ICC's counsel to NFPA's counsel (Exhibit C) that, at p. 3, makes clear the nature and scope of the ownership rights that ICC is seeking to protect in this litigation. *See further* pp. 9-10, *infra*.

[2]    The Supreme Court has rejected the proposition that a federal court may impose stricter pleading requirements for certain types of litigation than are applicable in other cases. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the Court held that such a heightened standard could be required only through formal amendment to the Federal Rules. *Id.* at 168-69. The Seventh Circuit has applied the *Leatherman* rule in the copyright context. *See Mid America Title Co. v. Kirk*, 991 F.2d 417, 421-22 (7th Cir. 1993). One judge in this District has applied a heightened pleading standard to copyright plaintiffs. *IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1278

4

In view of these standards of construction, ICC believes that amending its Complaint to specify further the nature and scope of its rights and interests in the IBC is unnecessary. Should the Court agree, ICC asks that it enter the attached proposed Order denying ICC's Motion for Leave to Amend as unnecessary. However, if the Court disagrees with ICC's view of the Complaint, ICC respectfully requests that the Court enter the alternative attached proposed Order granting the Motion.

## THE AMENDED COMPLAINT

ICC's Amended Complaint and Request for Injunction provides further clarification that ICC's copyright claims against NFPA encompass not only the new original sections in the IBC 2000, but also sections of the IBC 2000 that derive from the preexisting copyrighted works discussed above (various editions of the three prior legacy codes and the three prior drafts of the IBC 2000). To make this point explicit, the Amended Complaint lists the copyright registrations for these works and alleges that ICC owns the copyrights in each of them. These changes, if the Court finds them necessary, would ensure that this case is fully resolved on its merits and not partially on a technicality. They also would preclude the possibility that NFPA unfairly could escape liability simply by showing that the IBC 2000 sections it copied derive from preexisting copyrighted works and are not "original" sections of the IBC 2000. Moreover, these changes would eliminate the need for ICC to file a new lawsuit covering preexisting sections, a course of action that would impose burdens on both the parties and this Court.

---

(N.D. Ill. 1997). However, this purported copyright exception has been criticized as inconsistent with both *Mid America Title Co.* and *Leatherman. See Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 790 (E.D. Va. 1998) ("The Court finds the Seventh Circuit's application of *Leatherman* in *Mid America Title Company* to be persuasive...). *See also* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1237 (Supp. 2002) (heightened pleading standard for copyright claims is "in clear violation of the mandate of Rule 8," particularly in light of *Leatherman*).

5

As demonstrated more fully below, these amendments would not cause NPFA undue prejudice. Even if this Court accepts NFPA's narrow interpretation of ICC's Complaint, ICC has provided NFPA with substantial notice regarding the nature and scope of its copyright claims. In its responses to NFPA's discovery requests and in other communications to NFPA during discovery, ICC clearly and repeatedly advised NFPA as to the specific rights and interests it is seeking to protect in this litigation. NFPA thus has had ample time in which to conduct discovery on ICC's preexisting works. In fact, the record shows that NFPA already has explored the development of the three "legacy" codes in considerable detail, as discussed below.

Accordingly, if this Court deems ICC's Complaint lacking, it should grant ICC leave to amend. Conversely, if it concludes, as ICC has, that the Complaint is sufficient, it should deny this motion as unnecessary.[3]

**ARGUMENT**

**I.     THE FEDERAL RULES OF CIVIL PROCEDURE ESTABLISH A VERY LIBERAL STANDARD GOVERNING MOTIONS TO AMEND.**

After the service of a responsive pleading by an opponent, a party's motion for leave to amend falls within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Fed. R. Civ. P. 15(a) provides that such leave "shall be freely given when justice so requires." This requirement is widely interpreted to reflect a "liberal, pro-amendment ethos" on the part of the rule's drafters. 3 *Moore's Federal Practice*, § 15.14[1] (Matthew Bender 3d ed.). Indeed, "[t]his circuit has adopted a liberal policy respecting amendments to pleadings so that cases may be decided on their merits and not on the basis of technicalities." *Green v. J.C. Penney*

---

[3]     ICC's Amended Complaint also removes BOCA as a separate Plaintiff in this case. In 2003, BOCA, together with ICBO and SBCCI, reorganized into ICC. As noted above, BOCA has transferred all its rights and interests in its codes to ICC, and its presence in this lawsuit thus is unnecessary. Accordingly, ICC respectfully requests that it be permitted to proceed as the sole Plaintiff in this action. The Amended Complaint also contains other wording changes for purposes of clarity and precision.

6

*Auto Ins. Co., Inc.*, 722 F.2d 330, 333 n.3 (7th Cir. 1983). *See also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (policy governing amendments "is to be applied with extreme liberality"). In *Foman*, the Supreme Court held that a court should grant a motion for leave to amend unless certain factors are present: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] [5] futility of the amendment." 371 U.S. at 182.

## II. NONE OF THE *FOMAN* FACTORS JUSTIFYING DENIAL OF A MOTION TO AMEND IS PRESENT IN THIS CASE.

### A. ICC's Motion for Leave to Amend has not been unduly delayed.

A brief review of the procedural history of this litigation shows that ICC's Motion has not been unduly delayed. Although this suit was filed in August 2002 (at which time ICC mailed a courtesy copy of its Complaint to NPFA), ICC refrained from serving NFPA while settlement negotiations were conducted during the latter half of that year. ICC served NFPA with its Complaint on December 4, 2002. NFPA served its Answer, Affirmative Defenses and Counterclaim on February 11, 2003. In May 2003, NFPA sued ICC for trademark infringement and related claims in federal court in Massachusetts. For much of the remainder of 2003, both parties focused their efforts on the Massachusetts matter and did not undertake discovery in this case.[4]

In early 2004, the parties again agreed to try to resolve this matter without further litigation, and the case was referred to mediation proceedings under Magistrate Judge Brown's

---

[4] *Cf. Security Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995) (granting motion to amend despite 16-month delay in which case lay dormant during pendency of related case and opposing party was not prejudiced).

7

supervision. This mediation process ended unsuccessfully in May, and the parties then began to engage in active discovery.

By filing this Motion, ICC is responding promptly to NFPA's belated assertion that ICC's Complaint is limited to infringement of sections "original" to the IBC 2000. NFPA's recent assertion that it has been surprised by the nature and scope of ICC's claims cannot be credited. In March 2004, ICC provided NFPA with a spreadsheet listing over 400 sections of the IBC 2000 that it claimed are infringed by the NFPA 5000. NFPA cannot seriously assert that, upon receiving that list, it believed ICC was contending that all these 400-plus passages were drafted in the period between the publication of the IBC 2000 Final Draft and the actual IBC 2000. Any cursory review of the various IBC 2000 drafts would have indicated otherwise. In addition, as noted above, NFPA's Counterclaim demonstrates that NFPA knew that ICC was asserting whatever rights and interests it had in the IBC 2000. ICC counsel's July 16, 2004 letter to NFPA's counsel (Exhibit C, p. 3) also makes clear the nature and scope of ICC's claims.

Moreover, delay in filing a motion to amend is not grounds for its denial, unless there is specific prejudice to the opposing party. *Moore's* § 15.15[2]. *See also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (affirming grant of leave to amend where motion was filed four years after original complaint and opposing party made no showing of prejudice or bad faith); *United States v. Pend Orielle Public Util. Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991) ("[d]elay alone does not provide sufficient grounds for denying leave to amend....") (internal quotation omitted). This rule is particularly applicable where, as here, the proposed amendment does not in fact raise additional causes of action or seek to add additional parties.[5] *See Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) ("Where an amendment would do no more than clarify legal theories or make technical corrections...delay, without a

---

[5] Indeed, the amendment here sought would to drop a Plaintiff – BOCA – and thus simplify the case.

8

showing of prejudice, is not a sufficient ground for denying the motion."). As demonstrated below, there is no prejudice here from delay.

**B.      *Foman* factors (2) and (3) are inapplicable to this case.**

*Foman* factor (2), which permits a court to deny leave to amend where such a motion reflects bad faith or dilatory motive, is clearly inapposite here. As noted, ICC consistently has indicated throughout this litigation that its copyright claims include passages that derive from preexisting sources. It now moves to amend because NFPA recently has asserted a contrary interpretation. There is no bad faith or dilatory motive on ICC's part.

Under *Foman* factor (3), leave to amend may be denied where the moving party has shown "repeated failure to cure deficiencies by amendments previously allowed." 371 U.S. at 182. ICC has not sought previously to amend its pleadings in this litigation and therefore this factor is inapplicable.

**C.      NFPA would not be unduly prejudiced by ICC's Amended Complaint.**

A critical factor in determining whether undue prejudice would result from an amended pleading is whether the amendment would introduce a new theory of recovery into the case or would require the opposing party to undertake substantial additional discovery. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). *See also Goldberg v. Rainbow Path, Inc.*, 1997 WL 688881, at *6 (N.D. Ill. Oct. 24, 1997) ("[P]rejudice results when assertion of a new claim would significantly delay the resolution of the dispute and would require the opponent to expend significant additional resources to conduct discovery and prepare for trial."). Where such factors are not present, and the proposed amendment is "based on facts similar to the original complaint," courts are significantly less likely to find undue prejudice. *Bell*, 160 F.3d at 454. The importance of this distinction has been recognized in this Circuit. In *Bower v. Jones*, 978 F.2d 1004 (7th Cir. 1992), the court held that undue prejudice would not result from the

9

plaintiff's amended complaint because, "[l]egally, the claim and likely defenses to it are quite similar to those involved in the original...claim, meaning that the defendants will incur little extra time or expense in defending the claim." *Id.* at 1010.

These considerations demonstrate that no undue prejudice to NFPA would result from ICC's Amended Complaint. The Amended Complaint would not introduce a new cause of action or theory of recovery into this case. It continues to assert, albeit with more specificity, that ICC seeks to protect all its "rights and interests in the IBC 2000."

NFPA also has had ample opportunity during discovery to seek (and indeed has sought) information and documents regarding the expansive "rights and interests in the IBC 2000" that ICC seeks to protect by this lawsuit and that NFPA, in its Counterclaim, recognized ICC was seeking to protect. As noted, in March ICC gave NFPA a spreadsheet listing over 400 sections of the IBC 2000 that ICC claimed were infringed by the NFPA 5000 -- many of which have their origins in preexisting codes in which ICC owns the copyright. Moreover, ICC specified the full nature and scope of its claims three months before the close of discovery when it served its Supplemental Responses to NFPA's First Set of Interrogatories on June 30, 2004. (*See* Exhibit D). In response to NFPA's Interrogatory No. 5, which sought the basis for ICC's claim that it is the owner of all rights and interests in the IBC 2000, ICC identified both its copyright registration for the IBC 2000 and the registrations for the preexisting codes.[6]

ICC's communications to NFPA in subsequent weeks repeated the nature and scope of its claims. In a letter to NFPA's counsel dated July 16, 2004, ICC stated that, because it owns (and thus seeks to protect language from) each of the earlier codes, "there is no need to distinguish the preexisting material from the IBC-2000." Letter from Wendy C. McGraw to Christopher

---

[6]     In response to another interrogatory seeking the process or method utilized in creating the IBC text, ICC stated: "A substantial amount of the text of the IBC is comprised of material contained in the existing model codes of the organizations that formed ICC." ICC's Supp. Resp. First Interrogs., No. 3(c).

Centurelli 3 (July 16, 2004) (Exhibit C). ICC also reiterated this position in detail in its August 9 Memorandum in Opposition to NFPA's Motion to Compel. *See* Mem. Opp. NFPA's Mot. Compel at 9-10. And ICC's counsel repeatedly expressed this view during this Court's August 12, 2004 hearing on NFPA's motion. *See* Transcript of Proceedings, Aug. 12, 2004 (Exhibit A), at 13-15, 18-19 ("The complaint clearly encompasses not only the new material that was added by the work of these committees, but also the material that was taken from the three preexisting legacy codes."). NFPA thus was put on notice of the nature and scope of ICC's claims well before the close of discovery and had every opportunity to serve ICC with discovery requests regarding the preexisting codes.

In fact, NFPA already has taken extensive discovery on the development of these earlier works. Schedule A of NFPA's July 6, 2004 Notice of 30(b)(6) Deposition (attached as Exhibit B) contains some 18 separate items to be inquired about on this very issue. Items 24 through 41 on this Schedule state that NFPA will seek information regarding the development of BOCA's, SBCCI's, and ICBO's building codes and ICC's ownership interests in these works.

For example, as to BOCA, items 24-29 state that NFPA will seek information about:

- The development of the Building Officials and Code Administrators International, Inc. ("BOCA") building codes including BOCA's National Building Codes.

- The selection, formation, purpose and responsibility of each committee responsible for BOCA's National Building Codes.

- The qualifications, experience and role of each committee member responsible for BOCA's National Building Codes.

- The process and procedures for submitting and accepting public proposals and comments for BOCA's National Building Codes.

- The nature and existence of all agreements, licenses or other documents signed by the code development committee members and/or persons submitting public proposals and comments for BOCA's National Building Codes, including any and all copyright release forms.

11

- ICC's ownership interest in BOCA's National Building Code.

NFPA also indicated it would depose about the same matters concerning SBCCI and ICBO. *See* items 30-41.

Various other items of the 30(b)(6) Deposition Notice establish that NFPA intended to explore every aspect of the development of the IBC 2000. For example, item 18 states that NFPA would inquire into "the origin of each section of the IBC 2000 that the ICC alleges to be infringed by the NFPA 5000."

Examination of deposition transcripts shows that NFPA did indeed explore the development of the three legacy codes. *See, e.g.,* Deposition of Michael J. Pfeiffer (ICC's 30(b)(6) witness as to BOCA's codes) (excerpts attached as Exhibit E); Deposition of Paul D. Armstrong (ICC's 30(b)(6) witness as to ICBO's codes) (excerpts attached as Exhibit F); Deposition of John R. Battles (ICC's 30(b)(6) witness as to SBCCI's codes) (excerpts attached as Exhibit G); Deposition of Bob D. Heinrich (excerpts attached as Exhibit H). The following testimony of Mr. Pfeiffer is indicative of the nature of NFPA's examination as to the development of the three legacy codes:

> Q    Okay. Let's talk about the development of BOCA's National Building Code.
>
> A    Okay.
>
> Q    How was BOCA's National Building Code developed?
>
> A    Through a process very similar to what ICC utilizes, the submittal and review of code changes, staff involvement in terms of production of those code changes, taking those code changes and producing a monograph, holding a series of hearings and ultimately a final hearing where decisions are finally made.

Transcript at 171, ll. 12-23.

As Exhibit E shows, NFPA's counsel continued at some length to explore the development of the BOCA code. Moreover, NFPA's counsel asked ICC's 30(b)(6) witnesses equally direct

12

questions regarding the development of ICBO's and SBCCI's codes. *See* Exhibits F, G. As these Exhibits all indicate, NFPA has inquired into the development issues in considerable detail.

These various discovery efforts underscore the fact that NFPA was aware of the nature and scope of ICC's claims well before the close of discovery and in fact explored the legacy codes' development in depth. NFPA thus cannot legitimately claim that it will incur undue prejudice as a result of ICC's Amended Complaint. *Cf. Bower*, 978 F.2d at 1010 (finding no undue prejudice where necessary discovery on amended claim already had been accomplished).

**D.     The claims asserted in ICC's Amended Complaint are not futile.**

A proposed amendment may be deemed futile if it "merely restates the same facts using different language...reasserts a claim previously determined....fails to state a valid theory of liability, or could not withstand a motion to dismiss." *Bower*, 978 F.2d at 1008 (7th Cir. 1992) (internal quotations omitted). ICC's Amended Complaint clearly states a valid Copyright Act claim that has not been previously determined in this litigation and would withstand a motion to dismiss.[7] The amendment, therefore, is not futile.

---

[7]     Contrary to the suggestion made by NFPA's counsel before this court, *see* Transcript of Proceedings, Aug. 12, 2004 (Exhibit A), at 13, ICC's contentions regarding its copyrights in the codes published by BOCA, ICBO, and SBCCI are not barred by the Copyright Act's statute of limitations. The Act imposes a three-year statute of limitations that does not begin to run until the last act of infringement has taken place. 17 U.S.C. § 507(b); *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983). NFPA first published and sold the NFPA 5000 in 2002 and continues to do so, and to infringe ICC's copyrights, at the present time.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court, if it deems an amendment necessary, grant their Motion for Leave to Amend Their Complaint and Request for Injunction. Conversely, if the Court believes that the present Complaint is sufficient, it should deny this Motion as unnecessary.

Respectfully submitted,

Dated: October 19, 2004

James Hamilton
Wendy C. McGraw
Swidler Berlin Shereff Friedman, LLP
3000 K St., NW, Suite 300
Washington, DC 20007
(202) 424-7826 (T)
(202) 424-7643 (F)

Alan S. Wernick
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL 60604-2827
(312) 540-7070 (T)
(312) 540-0578 (F)

Counsel for Plaintiffs

Of Counsel:
Warren Anthony Fitch
Kevin R. Amer
Swidler Berlin Shereff Friedman, LLP
3000 K St., NW, Suite 300
Washington, DC 20007
(202) 424-7500 (T)
(202) 424-7643 (F)

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October 2004, a copy of the foregoing Motion for KRA

Leave to Amend Complaint and Request for Injunction and supporting Memorandum was served

by first-class mail on the following:

>Thomas F. Holt, Jr., Esq.
>Kirkpatrick & Lockhart LLP
>75 State Street
>Boston, MA 02109-1808

Kevin R. Amer

15

# See Case File

# for

# Exhibits