**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

F I L E D

NOV 2 2004

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC., and BUILDING OFFICIALS AND CODE ADMINISTRATORS INTERNATIONAL, INC. <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL FIRE PROTECTION ASSOCIATION, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 02C 5610

Judge Rebecca R. Pallmeyer **DOCKETED**

**NOV 2 2 2004**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO PRECLUDE EVIDENCE NOT DISCLOSED DURING FACT DISCOVERY**

**PRELIMINARY STATEMENT**

This is a copyright infringement case in which Plaintiff International Code Council ("ICC") alleges that Defendant National Fire Protection Association ("NFPA") unlawfully copied ICC's work -- the International Building Code 2000 ("IBC 2000") -- in order to create a competing building code known as the NFPA 5000 Building Construction and Safety Code ("NFPA 5000"). ICC has identified over 400 sections of the NFPA 5000 that ICC contends NFPA unlawfully copied from the IBC 2000, as well as the corresponding passages of the IBC 2000 that these sections infringe. In defense of ICC's copyright infringement claim -- and to support a counterclaim asserting that ICC's copyright registration is invalid because the language of the IBC 2000 is not "original" -- NFPA contends that the sections of these codes identified by ICC were derived from third party sources not owned by ICC. ICC requested that NFPA

specifically identify these third party sources in discovery, and NFPA represented to both ICC

and this Court that it would provide the requested specific information by the close of fact

discovery on September 30, 2004. It is now several weeks past that deadline, and NFPA has

failed to provide the requested information for the majority of the code sections that were

identified by ICC. Thus, ICC requests that the Court preclude NFPA from presenting any

evidence of third party sources that was not produced before the close of fact discovery.

## BACKGROUND

ICC owns the registered copyright in the IBC 2000, as well as the copyright registrations

in the preexisting works upon which the IBC 2000 is partly based. ICC's ownership of the

registered copyrights in the IBC 2000 and the various preexisting works constitute *prima facie*

evidence of the validity of the copyrights and of the facts stated in the certificates. See 17 U.S.C.

§ 410(c). This *prima facie* presumption of validity means that the registered works are presumed

to be both original and copyrightable. See Masquerade Novelty, Inc. v. Unique Indus., Inc., 912

F.2d 663, 669 (3rd Cir. 1990). It is Defendant's burden to rebut that presumption. Id. at 668.

In August 2002, ICC sued Defendant for infringement of its copyrights in the IBC 2000.

In its Answer, Defendant contended that NFPA is not liable for infringement and asserted a

counterclaim seeking a declaratory judgment that ICC does not possess any valid copyright in

the IBC 2000. These claims are based partly on the contention that ICC's code drafting and

development processes do not satisfy the "work made for hire" standard set forth in the

Copyright Act and decisional law. NFPA's claims also are based on the assertion that many of

the code passages, in both the NFPA 5000 and the IBC 2000, identified by ICC were derived

from other works in which ICC does not hold copyrights, including NFPA's Life Safety Code,

2

the Epcot Code, the Board for the Coordination of Model Codes ("BCMC"), certain unspecified "common sources," and sources in the public domain.

NFPA thus has asserted two related claims. The first claim addresses the purported origins of the NFPA 5000 sections that ICC claims infringe its copyrights in the IBC 2000. NFPA is attempting to defend against ICC's infringement claim by asserting that the NFPA 5000 sections identified by ICC were not taken from the IBC 2000 but in fact were based on other sources that NFPA is entitled to copy. The second claim, asserted as a counterclaim, addresses the purported origins of the IBC 2000 sections that ICC alleges have been infringed. This claim contends that, even if NFPA did copy these code sections into the NFPA 5000, it is not liable for infringement because the IBC 2000 sections themselves are derived from sources in which ICC has no ownership interest.

ICC served discovery requests on NFPA in order to explore these related contentions. (See discovery requests attached as Exhibit 1.) For example, Interrogatory No. 6 asked: "For each portion, section or text of the NFPA 5000 identified on Exhibit 1, identify...the source(s) of the text...."[1] Plaintiffs' interrogatories also specifically asked Defendant to identify which portions of the NFPA 5000, if any, were based on NFPA's Life Safety Code, the Epcot Code, language developed through the Board for Coordination of Model Codes, a "common source," or information in the public domain, and to identify "all facts" supporting the contention that the NFPA 5000 is an "independent creation." See Interrogatory Nos. 7-12. Interrogatory No. 19 also asked: "If you contend that any of the alleged infringed sections of the IBC-2000 originated in an NFPA code, the Code of Federal Regulations, or any other code in which ICC does not

---

[1] Exhibit 1 refers to a spread sheet identifying over 400 infringing sections of the NFPA 5000, and the corresponding infringed sections of the IBC 2000.

own the copyright registration, identify those sections of the IBC 2000 and identify the code that you contend is the original source of the material."

NFPA failed to provide sufficient responses to these requests, and as a result, ICC was forced to file a motion to compel. That motion was heard by the Court on September 17, 2004. At the motions hearing, counsel for ICC contended that NFPA should be required to identify the specific sections of the outside works from which the code passages at issue allegedly are derived. For example, ICC's counsel stated to the Court, "If they contend that these allegedly infringing sections rest on prior NFPA codes, they are under a duty to tell us what specific sections they are talking about." Transcript at 7 (attached as Exhibit 2).

In response, counsel for NFPA repeatedly represented to the Court that NFPA would provide ICC with specific information concerning the outside sources from which it contends the subject NFPA 5000 sections (or IBC sections), were derived. NFPA's counsel stated:

- "We plan on continuing to supplement [NFPA's interrogatory responses] to get down to section and particular source when we have that information. So, I think that will short-circuit this motion because as soon as we get those facts we will pass them on to the plaintiff." Id. at 5.

- "As I said right at the outside [sic], we will provide the section and the source." Id. at 10.

- "Your Honor, that is our plan. We are working as hard as we can in order to identify these sections and provide that by the close of discovery. It is our intention to do so." Id. at 11.

- "Again, to short-circuit this, the NFPA will be providing the facts that it has concerning the source of these provisions that we have been accused of infringing." Id. at 15.

- "I fully intend to provide you all the information that the NFPA has on these various sections prior to the close of fact discovery." Id. at 16 (emphasis added).[2]

---

[2] That NFPA fully understood its obligation to provide pinpoint cites to the section of other codes it alleges the NFPA 5000 was derived is obvious, because on September 30, 2004 -- the last day of fact

4

The Court made clear that it expected NFPA to provide this information to ICC. The Court stated that "it's eminently the defendant's responsibility to point out other sources from which ICC's code must have come." Id. at 9. Moreover, the Court directed NFPA to provide this information by the close of discovery. When counsel for NFPA suggested that the sources of the infringing sections might not be identified until trial, the Court stated "It seems to me we are going to get into that now, and certainly within the next 13 days." Id. at 15. The Court clearly stated its expectation that additional discovery motions would be unnecessary because "it sounds as though the NFPA is going to be fully responsive within the next couple of weeks." Id. See also id. at 17 ("I am anticipating that the NFPA is going to provide the information regarding the segments of ICC's code that have third-party sources and what those third-party sources are."). The Court further agreed with ICC that NFPA could not withhold this information as falling within the domain of "expert" testimony. Id. at 16-17.

Notwithstanding the representations made by counsel for NFPA, and the clear direction of the Court, NFPA has failed to provide any specific source information for the majority of the sections of the NFPA 5000 and IBC 2000 that are at issue. NFPA has produced two charts that purport to provide the requested information. The first of these charts, attached as Appendix B to NFPA's Third Supplemental Responses to Plaintiffs' Second Set of Interrogatories (attached hereto as Exhibit 3), purports to provide source information for the NFPA 5000 sections that ICC has identified as infringing. This is the most comprehensive response that NFPA has provided. NFPA's second chart, attached as Appendix C to NFPA's Second Supplemental Responses to Plaintiffs' Third Set of Interrogatories (attached hereto as Exhibit 4), is substantially less

discovery -- it provided Plaintiffs with numerous pinpoint cites to sections of other codes from which NFPA claims the NFPA 5000 was derived.

detailed. Although it purports to provide source information as to the corresponding IBC 2000 sections, it adds virtually nothing of substance to the first chart.[3]

In the case of both of these responses, the overwhelming majority of the "sources" are identified in such vague, imprecise terms that the information provided is essentially meaningless. For example:

- NFPA has identified 60 provisions of the NFPA 5000 as being derived from the "Uniform Fire Code" ("UFC"). NFPA has not identified the section of the UFC from which it contends the NFPA 5000 provisions were derived, nor has it identified the edition of the UFC upon which it claims to have relied.

- NFPA has identified 16 provisions of the NFPA 5000 as being derived from "FEMA." Once again, however, NFPA has not identified where in the FEMA regulations it obtained the material at issue, or what edition of the Code of Federal Regulations it is relying upon.

- NFPA has identified 2 provisions as coming from the "BCMC Process." However, NFPA has not identified the BCMC report that it claims to have relied upon.

- NFPA has identified 21 provisions as being derived from other NFPA publications, such as NFPA 101 and NFPA 221. However, NFPA has failed to provide a cite to any particular provision in these codes from which it claims to have derived the infringing sections of the NFPA 5000.

---

[3] NFPA's other responses to ICC's interrogatories are attached as Composite Exhibit 5. Appendix A to NFPA's Second Supplemental Responses to Plaintiffs' Second Set of Interrogatories appears to be an earlier version of Appendix B discussed above.

6

- NFPA has identified 70 provisions of the NFPA 5000 as being derived from the American Iron and Steel Institute ("AISI"). NFPA has not identified any AISI code, standard, or other publication on which it contends it relied in developing the NFPA 5000. Nor has NFPA provided any information about whether its reference to AISI refers to its "common source" defense, i.e., that AISI provided public comments and/or proposals to ICC during the code development process for the IBC 2000, which AISI also provided to NFPA during the code development process for the NFPA 5000. Moreover, assuming that the reference to AISI does relate to NFPA's common source defense, NFPA has not identified any written public comments and/or proposals with sufficient particularity to allow ICC to investigate NFPA's claim.

- NFPA has identified 254 provisions of the NFPA 5000 as being derived from outside organizations and individuals such as Portland Cement Association, American Forest and Paper Association, National Concrete Masonry Association, and Donald W. Belles. These assertions about alleged third party sources suffer from the same deficiencies as NFPA's references to AISI.

- NFPA has failed to identify any third party source information for 137 provisions of the infringing sections of the NFPA 5000.

ICC has requested that NFPA supplement these responses, but NFPA has been unable or unwilling to do so. See Letter from Wendy C. McGraw to Christopher Centurelli (Oct. 7, 2004) (attached as Exhibit 6); Letter from Wendy C. McGraw to Christopher Centurelli (Oct. 8, 2004) (attached as Exhibit 7).

NFPA's responses thus are deficient in three respects. First, NFPA has provided alleged code sources for the NFPA 5000 sections at issue without providing pinpoint citations to relevant sections of these sources. Second, NFPA has identified alleged "common sources" (e.g., AISI) for certain NFPA 5000 sections but has not identified the specific documents from which the NFPA 5000 sections allegedly were derived. Third, NFPA has provided third party sources upon which it claims the infringed IBC 2000 sections are based, but has not provided pinpoint citations to relevant sections of these outside sources. ICC therefore has moved to preclude NFPA from later supplementing its factual responses as to these areas of inquiry.

## DISCUSSION

**I.      The Court Should Preclude NFPA From Offering Any Evidence To Support Its Contentions That Was Not Disclosed In Fact Discovery.**

The purpose of contention interrogatories is to narrow the scope of the issues in the case, and to reduce the possibility of unfair surprise at trial. Weschler v. Hunt Health Systems, Ltd., 1999 WL 672902, at *1 (Aug. 27, 1999 S.D.N.Y.).[4] See also Sargent-Welch Scientific Co. v. Ventron Corp., 59 F.R.D. 500, 502 (N.D. Ill. 1973); Fed. R. Civ. P. advisory committee's note to Rule 33(b) [now 33(c)] (1970). The party responding to a contention interrogatory is obligated to "respond truthfully and completely." Weiss v. Chrysler Motors Corp., 515 F.2d 449, 456 (2nd Cir. 1975); Fed. R. Civ. P. 33(b)(1).

As a general rule, courts may preclude evidence at trial that is not disclosed in response to a contention interrogatory. Nike, Inc. v. Wolverine World Wide, Inc., 43 F.3d 644 (Fed. Cir. 1994) (precluding trademark claim where party failed to disclose infringement contentions prior to discovery cut-off); Holiday Inns, Inc. v. Robertshaw Controls Co., 560 F.2d 856 (7th Cir. 1977) (precluding alternate theory of recovery where plaintiff failed to supplement response to

---

[4] Copies of this opinion and the other unpublished decisions cited are attached as Composite Exhibit 8.

8

contention interrogatory to allege such theory); Heildelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd., 1997 WL 321686 (N.D. Ill. June 6, 1997) (excluding evidence not disclosed in responding to contention interrogatory prior to the fact discovery cut-off); THK America, Inc. v. NSK, Ltd., 917 F. Supp. 563 (N.D. Ill. 1996) (precluding introduction of documents to support defenses where defendant failed to disclose documents in answers to contention interrogatories); Weschler, 1999 WL 672902, at *2 (precluding defense not disclosed in response to contention interrogatory prior to discovery cut-off); Wesley-Jessen Corp. v . Pilkington Visioncare, Inc., 844 F. Supp. 987, 990 (D. Del. 1994) (providing plaintiff with five days to supplement its responses to contention interrogatories and ruling that, after supplementation, plaintiff would be precluded from offering any additional evidence at trial supporting the contention).

The court was faced with a similar issue in Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd., 1997 WL 321686 (N.D. Ill. June 6, 1996). In that case, the plaintiff sued the defendant for infringement of three patents. In its answer, the defendant asserted several affirmative defenses, including a defense that the alleged inventions "failed to meet one or more of the conditions of patentability" set forth in 35 U.S.C. §112. Id. at *1. The plaintiff served contention interrogatories on defendant in order to explore the factual basis of this defense. The defendant failed to provide any meaningful response to these interrogatories, and the fact discovery cut-off date passed. Thereafter, the defendant served an expert report that, for the first time, identified the basis and factual underpinnings of the Section 112 defense. The plaintiff moved to preclude any evidence on the Section 112 defense, based on the defendant's failure timely to disclose the basis of the defense in response to contention interrogatories. The court held that "by waiting until after the close of fact discovery to disclose the basis of their Section 112 defense, Defendant failed to timely supplement its initial interrogatory responses in

9

compliance with the requirements of Fed. R. Civ. P. 26(e)(2)." Id. at *2. The court further held that the late disclosure was prejudicial to the plaintiff, and granted the motion to preclude.

The Court should reach the same result here. There is no question that NFPA has failed to provide a timely response to ICC's discovery requests, notwithstanding the clear direction from the Court that a full and complete response was expected on or before September 30, 2004. Furthermore, there is no excuse for NFPA's failure. NFPA has had ample opportunity to identify the specific source information that it contends supports its defense in this matter. ICC provided NFPA with a list of the subject sections of the NFPA 5000 and IBC 2000 in March 2004. Thus, NFPA has had more than six months to develop the facts necessary to support its defense. Moreover, NFPA clearly understands and has acknowledged its obligations to provide pinpoint cites: at the hearing before this Court on September 17, its counsel said it would do so and, indeed, as to some allegedly antecedent sections, NFPA has done so. See Exhibit 3.

The prejudice to ICC from NFPA's omissions hardly could be clearer. ICC cannot investigate the accuracy and veracity of NFPA's defense if NFPA won't tell ICC what its defense is. NFPA's broad and generic references to alleged third party sources fail to advise ICC of the factual basis of NFPA's claim.

Federal litigation is not a guessing game. If NFPA has a defense to ICC's claim of copyright infringement, it was incumbent upon NFPA to articulate the factual basis of that defense before the close of fact discovery. As the Court has observed: "[I]t's eminently the defendant's responsibility to point out other sources from which ICC's code must have come." Transcript at 9.

NFPA cannot wait until expert discovery, summary judgment, or trial to disclose what it contends are the sources of the relevant sections of the NFPA 5000 and the IBC 2000. The

10

Court instructed NFPA that this information must be provided by September 30, 2004. Transcript at 5.

Under these circumstances, NFPA should be bound by the substance of its discovery responses as of September 30, 2004. It thus should be precluded from offering any evidence of a code source for any of the subject sections of the NFPA 5000, unless the third party source was identified by NFPA with a pinpoint cite to the relevant section or provision of the preexisting code on or before September 30, 2004. NFPA also should be precluded from offering evidence of a "common source" for any NFPA 5000 section unless on or before September 30 it identified with precision the document submitted by such purported "common source." In addition, NFPA should not be permitted to introduce any evidence of an alleged third party source of any IBC 2000 section identified by ICC as being infringed, unless on or before September 30 NFPA identified such source with a pinpoint cite to the relevant section or provision of that source.

## II. Federal Rules Of Civil Procedure 37(b)(2) and 16(f) Provide Independent Bases For Exclusion Of Any Supplemental Evidence Offered By NFPA.

Fed. R. Civ. P. 37(b)(2) permits a court to enter appropriate sanctions, including the preclusion of evidence, where a party "fails to obey an order to provide or permit discovery...." The Seventh Circuit repeatedly has affirmed that this requirement does not apply solely to written orders but encompasses any statement by the court that provides clear notice regarding the party's discovery obligations. Halas v. Consumer Servs., Inc., 16 F.3d 161, 164 (7th Cir. 1994) ("[A]n oral directive from the district court provides a sufficient basis for Rule 37(b)(2) sanctions if it unequivocally directs the party to provide the requested discovery."); Tamari v. Bache & Co. (Lebanon) S.A.L., 729 F.2d 469, 472 (7th Cir. 1984) ("In general, where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel the

11

discovery from the opposing party."). Moreover, courts in this Circuit have indicated that the "order" requirement is satisfied by a party's promise to the court that it will comply with its opponent's discovery requests by a certain date. Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co., 667 F.2d 600, 604 (7th Cir. 1981) (party's "promise in open court, which was not kept, could be treated as the equivalent of an order"); Southland Corp. v. Haines, 1992 WL 82356, at *5 (N.D. Ill. Apr. 20, 1992) ("[T]he fact that defense counsel promised to the court and to the plaintiff's counsel that he would [produce documents] in open court and on the record is enough to warrant sanctions" under Rule 37(b).).

These precedents are directly applicable here. Following ICC's Motion to Compel, NFPA was able to prevent the entry of a formal order compelling production by assuring the Court and ICC that it would produce the requested information by the close of discovery. NFPA should not be permitted to avoid the entry of a court order by providing a promise and then, after failing to fulfill that promise, evade sanctions by asserting that no order has been entered.

Moreover, Fed. R. Civ. P. 16(f) provides an additional basis for this Court to preclude NFPA from offering any evidence not produced during fact discovery. NFPA's failure to provide information responsive to ICC's contention interrogatories is a violation of the Court's scheduling order, which required that fact discovery be completed by September 30, 2004. Rule 16(f) provides that a court may preclude a party from offering any evidence that was not produced in accordance with the court's pre-trial order. See Rabb v. Amatex Corp., 769 F.2d 996 (4th Cir. 1985) (affirming preclusion of evidence under Rule 16(f) where party failed to comply with discovery deadlines under pretrial order); Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America, 1995 WL 609231, at *6 (N.D. Ill. 1995) (precluding advice-of-counsel defense in patent infringement case where defendant did not waive attorney/client privilege until

12

after close of fact discovery); 3 *Moore's Federal Practice*, § 16.91[1] (Matthew Bender 3d ed.).

Moreover, a court may enter such an order even in the absence of prejudice to the other party.

John v. State of Louisiana, 899 F.2d 1441, 1448 (5th Cir. 1990). Accordingly, NFPA should be

precluded from introducing any evidence that it had not disclosed on or before the fact discovery

deadline of September 30, 2004, established by this Court.

## CONCLUSION

For the forgoing reasons, the Court should preclude NFPA from introducing any

evidence of a code source for the text of the NFPA 5000, unless NFPA provided a pinpoint cite

to the alleged code source on or before September 30, 2004. In addition, NFPA should be

prevented from submitting any evidence of a "common source" for any infringing NFPA 5000

section unless on or before September 30 it specified the document submitted by the alleged

"common source" that purportedly contained language upon which NFPA relied. Furthermore,

NFPA should be precluded from introducing any evidence of an alleged third party source for

any section of the IBC 2000, unless on or before September 30 it provided a pinpoint cite to the

relevant section or provision of such source.

Respectfully submitted,

Dated: November 1, 2004

_____
James Hamilton
Wendy C. McGraw
Swidler Berlin Shereff Friedman, LLP
3000 K St., NW, Suite 300
Washington, DC 20007
(202) 424-7826 (T)
(202) 424-7643 (F)

Alan S. Wernick
Querrey & Harrow, Ltd.

13

175 West Jackson Blvd., Suite 1600
Chicago, IL 60604-2827
(312) 540-7070 (T)
(312) 540-0578 (F)

Counsel for Plaintiffs

Of Counsel:
Warren Anthony Fitch
Kevin R. Amer
Swidler Berlin Shereff Friedman, LLP
3000 K St., NW, Suite 300
Washington, DC 20007
(202) 424-7500 (T)
(202) 424-7643 (F)

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November 2004, a copy of the foregoing Motion to

Preclude Evidence Not Disclosed During Fact Discovery and supporting Memorandum was

served by first-class mail on the following:

> Thomas F. Holt, Jr., Esq.
> Kirkpatrick & Lockhart LLP
> 75 State Street
> Boston, MA 02109-1808

*Kevin R. Amer*

Kevin R. Amer

15

# *See Case File*

# *for*

# *Exhibits*