CASE NO. ___*02cv 5610*___

FILE DATE: ___*2-28-05*___

ATTACHMENT #. ___*2*___

EXHIBIT _____

TAB (DESCRIPTION) _____

# Exhibit S

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC., ) and BUILDING CODE OFFICIALS AND ) CODE ADMINISTRATORS ) INTERNATIONAL, INC. ) ) Plaintiffs, ) ) v. ) ) NATIONAL FIRE PROTECTION ) ASSOCIATION, INC. ) ) Defendant. ) ) | Case No. 02C 5610 Judge Rebecca R. Pallmeyer |

## INTERNATIONAL CODE COUNCIL'S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff International Code Council, Inc. ("ICC"), for its supplemental responses to

Defendant National Fire Protection Association, Inc.'s ("Defendant" or "NFPA") First Set of

Interrogatories, and subject to all objections previously asserted, states as follows:

INTERROGATORY NO. 1.: Identify all portions or sections of the text of the NFPA

5000 that you allege infringes the IBC.

SUPPLEMENTAL RESPONSE: ICC supplements its response as follows:

Please see document attached as Exhibit A, which was previously provided to NFPA in

March 2004. ICC's comparison of the IBC-2000 and the NFPA-5000 is continuing, and ICC

reserves the right to supplement this response.

ICC further responds that the information requested may be derived or ascertained from the business records of ICC or from an examination, audit, or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the responses from those business records are substantially the same for ICC as for NFPA. Therefore, in accordance with Fed. R. Civ. P. 33(d), ICC refers NFPA to documents that will be made available for inspection and copying at a mutually convenient date and time.

INTERROGATORY NO. 2: For each portion or section of the text of the NFPA 5000 that you allege infringes the IBC as identified in response to Interrogatory No. 1, identify the corresponding portion or section of the text of the IBC that is allegedly infringed.

SUPPLEMENTAL RESPONSE: ICC supplements its response as follows:

Please see document attached as Exhibit A, which was previously provided to NFPA in March 2004. ICC's comparison of the IBC-2000 and the NFPA-5000 is continuing, and ICC reserves the right to supplement this response.

ICC further responds that the information requested may be derived or ascertained from the business records of ICC or from an examination, audit, or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the responses from those business records are substantially the same for ICC as for NFPA. Therefore, in accordance with Fed. R. Civ. P. 33(d), ICC refers NFPA to documents that will be made available for inspection and copying at a mutually convenient date and time.

INTERROGATORY NO. 3: For each portion or section of the text of the IBC identified in response to Interrogatory No. 2, identify (a) the author(s) of the text, (b) the source(s) of the

text, (c) the process or method utilized in creating the text, and/or (d) any licenses or assignments associated with the text.

SUPPLEMENTAL RESPONSE: ICC supplements its response as follows:

(a)     The authors of the IBC are Southern Building Code Congress International, Building Officials and Code Administrators International, Inc. and International Conference of Building Officials, as reflected on the Certificate of Registration. The Copyright Law, Title 17 U.S.C.A. §101, provides that, in a "work made for hire" the author of the work is the employer or other person for whom the work was prepared.

(b)     To the extent this interrogatory seeks the name of a specific individual who "authored" a particular sentence in the IBC, or who was the source of particular information contained in the IBC, that information, to the extent it exists, may be derived or ascertained from the business records of ICC or from an examination, audit, or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the responses from those business records are substantially the same for ICC as for NFPA. Therefore, in accordance with Fed. R. Civ. P. 33(d), ICC refers NFPA to documents that will be made available for inspection and copying at a mutually convenient date and time.

(c)     The IBC was developed through a collaborative process involving a number of people affiliated with ICC. A substantial amount of the text of the IBC is comprised of material contained in the existing model codes of the organizations that formed ICC. For example, plaintiff BOCA had an existing national building code, substantial portions of which are included in the IBC. Using these existing codes as a resource, ICC endeavored to develop a national building code that incorporated selected comments and suggestions from individuals in both the

public and private sector who were involved in the construction industry. The actual process of drafting the IBC was undertaken by several committees under the auspices and control of ICC. Each committee drafted its assigned sections of the IBC, preparing several drafts of the document. As drafts were completed and published, interested parties were given the opportunity to offer comments or suggest changes to the text of the document. Some of these comments and suggested changes consisted of proposed code language that the committee and ICC staff then reviewed, and in some cases modified, based on technical as well as formatting considerations. Other suggestions and comments consisted of general ideas that were given a particular expression by model code organization staff members and presented to the committee for possible inclusion in the document. After the IBC had gone through several drafts and comment periods, the IBC was published in March of 2000.

(d)      Any licenses or assignments associated with the IBC 2000 will be made available for inspection and copying at a mutually convenient date and time.

INTERROGATORY NO. 4: For each of the following works listed below, specifically identify those sections and/or portions of each work that is "pre-existing" material to the IBC as has been identified in Section 6a of the Certificate of Registration TX-156-896: (a) IBC Final Draft November 1997; (b) IBC Working Draft May 1997; (c) IBC Final Draft July 1998; (d) 1997 Standard Building Code; (e) BOCA National Building Code; and (f) the ICBO Uniform Building Code.

SUPPLEMENTAL RESPONSE:      ICC supplements its response as follows:

The response to this Interrogatory may be derived or ascertained from the business records of ICC or from an examination, audit, or inspection of such business records, including a

compilation, abstract or summary thereof, and the burden of deriving or ascertaining the responses from those business records are substantially the same for ICC as for NFPA. Therefore, in accordance with Fed. R. Civ. P. 33(d), ICC refers NFPA to documents that will be made available for inspection and copying at a mutually convenient time and place, including copies of the IBC Final Draft November 1997, IBC Working Draft May 1997, IBC Final Draft July 1998, 1997 Standard Building Code, BOCA National Building Code and the ICBO Uniform Building Code.

INTERRGATORY NO. 5: Identify the basis for ICC's claim that it is the owner of all rights and interests in IBC.

SUPPLEMENTAL RESPONSE: ICC supplements its response as follows:

ICC's ownership rights are based on its Certificate of Registration with the United States Copyright Office (Registration No. TX 5-156-896); the "works made for hire" provision of the Copyright Act; and its ownership rights in the pre-existing works identified in Section 6(a) of Registration No. TX 5-156-896 (as assigned by BOCA, ICBO, and SBCCI).

James Hamilton
Swidler Berlin Shereff Friedman, LLP
3000 K St., NW
Suite 300
Washington, DC 20007
(202) 424-7826 (T)
(202) 424-7643 (F)

Alan S. Wernick
Querrey & Harrow, Ltd.
175 West Jackson Blvd.
Suite 1600
Chicago, IL 60604-2827
(312) 540-7070 (T)
(312) 540-0578 (F)

Counsel for Plaintiffs

Of Counsel:
Warren Anthony Fitch
Wendy C. McGraw
Kevin R. Amer
Swidler Berlin Shereff Friedman, LLP
3000 K St., NW
Suite 300
Washington, DC 20007
(202) 424-7500 (T)
(202) 424-7643 (F)

Dated: June 30, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2004, a copy of the foregoing

INTERNATIONAL CODE COUNCIL'S SUPPLEMENTAL RESPONSES TO

DEFENDANT'S FIRST SET OF INTERROGATORIES was served by facsimile and by U.S.

Mail on the following:

> Thomas F. Holt, Jr., Esq.
> Kirkpatrick & Lockhart LLP
> 75 State Street
> Boston, MA 02109-1808
> Fax: (617) 261-3175

_Wendy C. McGraw_
Wendy C. McGraw

9151219v1

# Exhibit T

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


INTERNATIONAL CODE COUNCIL,    )
INC., and BUILDING OFFICIALS    )
AND CODE ADMINISTRATORS    )
INTERNATIONAL, INC.,    )    No. 02 C 5610
    )    Chicago, Illinois
                Plaintiffs,    )    December 10, 2004
    )    9:00 o'clock a.m.
    )
        vs.    )
    )
NATIONAL FIRE PROTECTION    )
ASSOCIATION, INC.,    )
    )
            Defendant.    )
        TRANSCRIPT OF PROCEEDINGS - STATUS/MOTION

        BEFORE THE HONORABLE REBECCA R. PALLMEYER
APPEARANCES:
For the Plaintiff:    SWIDLER, BERLIN, SHEREFF, FRIEDMAN, LLP
            3000 K Street, N.W.
            Suite 300
            Washington, D.C. 20007
            BY:   MR. JAMES HAMILTON
                MS. WENDY MC GRAW


            QUERREY & HARROW
            175 West Jackson Boulevard
            Suite 1600
            Chicago, Illinois 60604
            BY:   MR. ALAN S. WERNICK

For the Defendant:    KIRKPATRICK & LOCKHART, LLP
            75 State Street
            Boston, Massachusetts 02109
            BY:   MR. THOMAS F. HOLT, SR.
                MS. TARA CLANCY

ALSO PRESENT:    NATIONAL FIRE PROTECTION ASSOCIATION
            One Batterymarch Park
            Quincy, Massachusetts 02269
            BY:   MS. MAUREEN BRODOFF

Official Court Reporter:    JENNIFER S. COSTALES, CRR, RMR
            219 South Dearborn St., Room 1706
            Chicago, Illinois 60604
            (312) 427-5351

5

defendants have made all along, which is, I think they have made this all along, that whatever we call this code, it's certainly not something the plaintiff can claim a copyright in. Can we just approach that by way of a substantive motion?

MR. HOLT: Well, that's what we wish to do. And, Your Honor, I would like to, and I believe Your Honor put your finger on the issue here, and if I could just speak very candidly and try and advance the ball here.

THE COURT: All right, good.

MR. HOLT: And I think maybe if I could just hand up to the Court something I think will illustrate the problem. Can I hand it up with the Court's permission?

THE COURT: Sure.

MR. HOLT: Maybe we can start with first principles here. What I have provided to the Court is -- did I give you two of those?

MS. CLANCY: No.

MR. HOLT: I have it right here. Thank you.

What I provided to Your Honor is essentially what I've called a tally sheet here, which tracks the plaintiffs' answer to our interrogatory which said: Tell us which provisions we're infringing.

THE COURT: That's the 1 through --

MR. HOLT: 1 through 460. And that's been the organizing principle of our approach here, and that also I might

6

note is the organizing principle that Mr. Coffel used in providing his expert disclosure.

If you start from the very first allegation, and that's allegation number one, as you can see, if you were to take, we start cross-referencing here, but I think you can take, accept for the purposes of the present discussion this column 1 through 40 and so on and so forth, they correspond to the actual allegations themselves in the answers to the interrogatories.

THE COURT: Right.

MR. HOLT: That's behind I believe tab C in our opposition to their motion to exclude.

Now, if we start --

THE COURT: Okay. Go ahead.

MR. HOLT: If we start with the very first allegation that they have in their answers to interrogatories saying: Here is the provision of our code, this number one, this IBC that you're infringing, and the basis of the motion to exclude is: Well, you didn't tell us what the NFPA source was, and you didn't tell us the IBC's third-party source.

THE COURT: Right.

MR. HOLT: Well, if we can behind the second tab on this colored document there, there is just an unmarked tab, what Your Honor will see -- and, frankly, we are astonished that the plaintiffs when they filed this lawsuit apparently didn't read our code, because our code text discloses exactly where we got

7

the text from, and in this case, it's the acronym ASCE.  And that stands for the American Society of Civil Engineers.

Now, one of the premises here of the motion to exclude is:  Wait a second, Your Honor, exclude any evidence as to the source of the NFPA code because they didn't disclose it in discovery.  Candidly, Your Honor, and it goes against my grain to say this, I was stunned by that position, because if they simply read our code, they could see the source document.

Now, the American Society of Civil Engineers gave us a license to use this.  And in addition to that, that's precisely the thing they gave to --

THE COURT:  Plaintiff.

MR. HOLT:  -- the plaintiff.

Now, if it were to stop there, sobeit.  However, as you can see from the summary tally sheet, there are 50 of these ASCE references that are the accused provisions within the NFPA-5000.

THE COURT:  Now, I want to interrupt for just a moment.  Does the NFPA-5000 itself refer explicitly to the American Society of Civil Engineers?

MR. HOLT:  Yes, it does, Your Honor.  In fact --

THE COURT:  It refers to that in the code?

MR. HOLT:  If refers to it in the code, and it refers to it in a definition provision.  So in other words, there is no, there is no mystery here.

We have, for example, with the Court's permission, I

8

could also hand up the pertinent provision of the code itself.

THE COURT: I would appreciate that.

All right. So your argument is, say, on allegation one, you can't understand how it is that plaintiff could ever have claimed infringement, because your code itself shows the plaintiff that there is an independent third-party source?

MR. HOLT: Independent third-party source for which we have a license. And moreover, moreover, there are 50 such instances regarding the American Society of Civil Engineers.

Now, it gets even more incredible. If I could provide Your Honor with a corresponding section from the IBC-2000, and I'm --

THE COURT: Which is the plaintiffs' code.

MR. HOLT: The plaintiffs' code. For the record, I'm handing up to Your Honor chapter 35 of the IBC-2000 code. And if you turn to page 600 there, it's I think three or four pages in.

THE COURT: Yes.

MR. HOLT: It itself says, it shows that the ASCE, ASCE 7-98, which we reference on the face of our code, is precisely the source of their own code. So this kills two birds with one stone. If they were to have read our code before they sued us, with respect to 50 of the alleges acts of infringement of the 460 on their face they would have been able to ascertain that these came from the ASCE, and, moreover, the corresponding IBC-2000 provision that they're asserting against us is also taken from

9

that very same third-party source that they claim no ownership interest in, they're not employees under Feist as further explicated in Ried, they lose.

Now, this I note it gets worse or better depending on one's standpoint. If you were to take a look at the actual tab C in the answers to interrogatories, and those are in our principal moving papers, Your Honor, and forgive me for having you have to search through them.

THE COURT: Well, I think I have it actually. Okay. You're talking about interrogatory responses?

MR. HOLT: Yes.

THE COURT: Got it.

MR. HOLT: In our tab C --

THE COURT: Right.

MR. HOLT: -- in our papers, they have Exhibit A.

THE COURT: Okay.

MR. HOLT: And what this Exhibit A is, it's the table of the 460 accused provisions. And that was provided to us on June 30th of 2004. And this was to alert us once and for all to the provisions that are allegedly being infringed.

If you take a look at the ICC work where they identify their work, they in point of fact themselves reference this 1612.2, which cross-references back to the ASCE code provision even in their own chapter 35.

The significance of it is twofold, Your Honor. I don't

10

think I have to belabor the point. First, this is replicated 50 times. 50 of the 460 alleged instances of infringement are from the American Society of Civil Engineers 7. That's where we got them, and they are tracked verbatim from that under license, and, in fact, correspondingly, those 50 are used in the IBC-2000.

Now, there is a second instance where the plaintiffs were well aware of the fact that they did not have a cognizable ownership interest in asserted provisions.

There is an individual by the name of Donald Bellis. And Mr. Bellis is the representative of the Glaziers' Institute. Again, that's one of these trade groups that has to do, focuses their attention on curtainwall construction issues, these big windows in high-rise buildings, the glazing and placement of issues, very important life-safety issue.

The plaintiffs noticed Mr. Bellis' deposition ostensibly for the purpose, we thought, to find out where the code materials were, and somehow he was going to come up with an assignment giving an exclusive right to the plaintiff.

At the deposition what happened is Mr. Bellis testified, number one, as to 40 of the alleged acts of infringement. Mr. Bellis testified as a third party under subpoena by the plaintiff at a deposition that he had given the accused provisions, that he had drafted them and proposed them in this consultative process, they were adopted by the NFPA, and he had given the NFPA a license.

11

He stated further that he had simultaneously or at least during the promulgation process for the IBC-2000 also given them to the plaintiff under a nonexclusive license. And he said that these are just nonexclusive licenses he gave. He's the owner. He let NFPA use it, and he let the plaintiff use it.

Now, now we're up to 90 of the 460 provisions. What Mr. Coffel did -- and I might note Mr. Coffel behind tab O in that document he has that declaration in which he has said among other things that he participated in the code development process for both the NFPA-5000 and for the IBC-2000.

THE COURT: Right.

MR. HOLT: He said that all of the materials that were being requested or were the centerpiece of the motion to exclude had either been provided by the NFPA in discovery, they were either documents that were in the possession of the ICC that had been produced by the ICC, or they were from public third-party sources such as the Code of Federal Regulation, or they were from these third-party organizations like Mr. Bellis' Glazing Institute.

Now, Mr. Coffel was retained to basically respond to this one, this little chart that they put together in the answers to interrogatories at tab C. We said to Mr. Coffel: We've produced thousands of documents. Would you now please just format them in a way that is specifically responsive to the plaintiffs' table of 460 alleged acts of infringement.

12

That's what he did.  He did not -- he only worked from what we had produced and identified in answers to interrogatories and in 30(b)(6) deposition testimony, public records such as the Code of Federal Regulations, public records such as the Federal Emergency Management Act regulations, public records from the Environmental Protection Agency, and from these third-party sources.

And now what he's done, he's gone chapter and verse, and if I could get again, and I know this is somewhat tedious, Your Honor, but if you could go back to this document --

THE COURT:  Got it.

MR. HOLT:  -- what he has shown is in virtually every single instance, all 460, and you see the color codes, ASCE is the American Society of Civil Engineers.  Epcot is the Epcot building code, Epcot in Florida, that was a massive thousands and thousands of acres development, it was so large that Disney actually commissioned its own building code with the local county commissioners.  They have since licensed it to a number of parties, including us and, quite frankly, to the plaintiff here, and we have a license for that.

We have the NFPA's own code documents.  We have the Uniform Fire Code, for which we have a license.  And then we have these public proposals that came from people like Mr. Bellis.  We have this BCMC, which is this group that got together in the mid-'90s to try and consolidate and harmonize codes, and these

13

were given under license. Then we have this ASTM, which is the American Society for Testing Materials, for which we have a license.

And if you go to the very last page of that first set before that blank tab.

THE COURT: Yes.

MR. HOLT: You see that he's identified, if you add up all those columns and cross-foot them, almost all of the 460 accused provisions in the format that they have answered their interrogatories either come from, come from one of those sources, all of which we have a license or we own ourselves outright.

The thing that really is incredible is the NFPA itself was the source of 26. Now, this point 42 reference, that just references, there are subsections, Your Honor, and he weighted the averages. Each one of these 460 may have two subsections, may have three, some may have one, some may have five.

But on the face of it, 26 of the accused provisions come from NFPA's own codes, which in the IBC-2000 in chapter 35, where the plaintiff acknowledges the sources of their code, they acknowledge that the National Fire Protection Association is indeed the source of some of their own code provisions.

So we're being accused, among other things, of infringing our own code provisions, are being accused of infringing the ASCE provisions, are being accused of infringing upon the Mr. Bellis Glaziers. That gets you up to about 120

14

right there.

They don't have ownership. And I think that what's happened here is that there is a lot of discussion now on procedural issues such as motions for leave to amend, claims that we haven't provided. If you go to Mr. Coffel's report -- and by the way, the plaintiffs have not, did not serve a Rule 26 disclosure in this case. We have -- he will establish, if it comes to that at trial, the source of every one of these documents and as well to explain to the Court and to a jury how the process worked, and ultimately there will be a finding that there is no ownership.

Your Honor, respectfully, we need not get that far. Under MidAtlantic, the case is cited in 1993 by the Seventh Circuit, the Court made it clear that while 17 USC Section 101 creates the rebuttable presumption of ownership for enforcing copyright registration, that once there is a demonstration that the plaintiff does not have ownership, that that burden shifts. And that point is dispositive in my view, Your Honor, of any further discussion on this motion to preclude.

And I might specifically direct the Court's attention to MidAtlantic Title Company versus Kirk, 59 Federal Reporter, Third Series, 719, and I was mistaken, Your Honor, it's Seventh Circuit, not 1993, it's 1995. And I think that's in accordance with a decision by this Court in Pickett versus Prince, 52 F.Supp.2d. 893, specific citation, page 901, Northern District of

15

Illinois, 1999.

THE COURT: Wow.

MR. HOLT: The burden shifts.

THE COURT: As a matter of fact, the Kirk case affirmed me.

MR. HOLT: I'm aware of that, Your Honor.

THE COURT: All right. Mr. Hamilton, do you want to respond?

MR. HAMILTON: Yes. Your Honor, what Mr. Holt has just done is to state his defense on the merits.

THE COURT: Right.

MR. HAMILTON: His defense on the merits as I understand it rests basically on two propositions, one, that the IBC-2000 is not a work made for hire, and, two, that we don't own the provisions in that code that we say are copyrighted.

Now, he is perfectly free to make that argument. But he has to do it in the proper form. He's either got to do it in a motion for summary judgment, or he has to make his defense at a trial.

The merits of this case, Judge, are not before you today. And the motions that we have raised, it seems to me, cannot be decided by any decision under the merits, because those issues have not been fully briefed. We have a lot to say in response to what he just said, but this is not the appropriate hearing to make those responses.

16

THE COURT: With that thought in mind, let me just give you, you know, kind of a thumbnail sketch of what I expect might happen. I think it's fair to say that the defendants were or should have been on notice that IBC, the IBC-2000 -- I'm sorry -- that plaintiffs were claiming rights, rights in the legacy codes, and for that reason now, I would either conclude with respect to the motion to amend that it is not necessary or grant it.

I also think that the motion to preclude defendants from putting on what I think is fairly characterized as an offense that rests both on facts and on expert testimony should also be denied, that the motion to preclude, that there has been adequate disclosure on the part of the defendants, and it can be -- it's perfectly clear from what Mr. Holt just told us and arguably even much more clear from the disclosures made by Mr. Caughlin and the documents what the defendant's position is going to be.

And I think we should proceed promptly to summary judgment, and I would be happy to set up a schedule for the briefing on that right now.

MR. HOLT: Thank you, Your Honor.

THE COURT: How much time -- I'm assuming that the defendants will file an opening motion, but it may be that the plaintiffs want to file a motion for summary judgment as well. And I can take cross motions or I can do them one at a time. How would you like to proceed?

MR. HOLT: Just one point of clarification. Did Your

17

Honor deny -- did Your Honor grant the motion for leave to amend or deny it?

THE COURT: Granted the motion for leave to amend, denied the motion to preclude.

MR. HOLT: Okay. The only issue we have there, Your Honor, is we did not receive any discovery on the underlying code development documents.

THE COURT: Correct. But my understanding of your position though, Mr. Holt, is that to the extent that the code development process utilized for the legacy codes is the same as the one that's utilized for the IBC-2000, the argument, substantive argument about copyrightability is the same, that they're not a work made for hire. They're works that are not made for hire, because the persons who contributed were not employees.

MR. HOLT: But they haven't identified specifically the sources. They have made that admission in their most recent filings in that December 7th papers. They said that the process for the legacy codes was the same for the IBC-2000.

THE COURT: Well, let me ask the question another way then. This is a question for you, Mr. Hamilton. Would you be willing to stipulate that the Court's ruling with respect to the IBC-2000 would have the same force and effect with respect to legacy codes?

MR. HAMILTON: Yes.

18

MR. HOLT: With that stipulation, Your Honor, if I could just have a moment to confer?

THE COURT: Sure.

(Discussion off the record.)

MR. HOLT: Your Honor, the only -- my colleagues have pointed out, made a very good point, if that stipulation is that the process was the same and the fact that there were no nonexclusive licenses granted in respect to the legacy codes, we would accept that stipulation and brief exclusively the IBC-2000 with an incorporation that those arguments would indeed apply by reference to the legacy codes.

MR. HAMILTON: I'm not going to stipulate as to what the facts are going to be as to the work made for hire conclusion. I will stipulate that the process for the IBC-2000 including the process for the three drafts was the same as the process for the legacy code. But I'm not going to stipulate as to what he just said in terms of what those facts may be.

THE COURT: Well, the fact issue, it seems to me the factual issue, if there is one, is nonexclusive licenses versus exclusive licenses.

If your claim either with respect to the IBC-2000 or any of the legacy codes rests on what we can call exclusive licenses, I think the defendants are entitled to know that.

MR. HAMILTON: Well, our claim basically is going to rest upon provision 1 of 101, which is whether the people that

19

created these codes were employees under the statutory interpretation.

THE COURT: Correct. But there it seems to me that the stipulation that the process was the same satisfies the concerns.

MR. HAMILTON: That's right.

THE COURT: And, once again, that means that what you are willing to stipulate is that the process was the same, and that you will not be claiming any nonexclusive -- I'm sorry -- any exclusive licenses are a basis for your claim here, other than those that might relate to the IBC-2000, and I don't know if there are any.

MR. HAMILTON: Yes, I would stipulate to that.

THE COURT: All right.

MR. HAMILTON: In terms of the legacy codes, we will stipulate that there were no exclusive licenses, yes.

MR. HOLT: We still don't know who the specific authors were. We would like to know who the authors were, because they're going to come in and say: "Oh, no. You know, Susan Smith was an employee." We don't know who she was. We don't have any documentation as to where she is today.

THE COURT: But it won't matter if the stipulation satisfies this concern, that to the extent that there are any -- if there are any persons involved in the IBC-2000 drafting that can comfortably be characterized as non-employees, the claim fails. We're not going to have to go into whether the legacy

20

codes were drafted by persons who weren't employees.

MR. HOLT: Okay. So to the extent there is a finding that the only drafters of the IBC were non-employees, these third parties that they have said was the case in their answer to interrogatories, that that premises would apply to the legacy code.

THE COURT: That's my understanding.

MR. HOLT: Thank you, Your Honor.

MR. HAMILTON: Judge, that was a misstatement of the facts. We have not said that under the statutory interpretation they're non-employees. In fact, we have said that these volunteers do qualify as employees, and we've also said that paid staff of these legacy -- of those mono-code people were heavily involved in the drafting.

THE COURT: A misunderstanding then. I don't think that counsel was saying that you're stipulating these people were non-employees, no.

MR. HAMILTON: Okay.

THE COURT: What he's saying is, I think what we're stipulating to is whatever findings the Court makes with respect to the issue of employees, independent contractors, you know, privately hired individuals, agents, et cetera, whatever findings the Court makes with respect to the IBC-2000 will cover the universe on that issue for legacy codes as well.

MR. HAMILTON: Yes, yes, yes.

21

THE COURT: In other words, I'm not saying you had non-employees. I'm not making that determination.

MR. HAMILTON: Yes. I want just --

THE COURT: We need a factual record on that.

MR. HAMILTON: Yes. And I will stipulate to that. But I want to make one clarification. Your Honor understands that there were three drafts of the IBC-2000.

THE COURT: But I understand the draft documents have been provided.

MR. HAMILTON: The draft documents have been provided and names of the volunteers and the staffers involved in those, the preparation of those drafts have been provided.

THE COURT: Sure.

MR. HAMILTON: I just want to make sure that when we talk about the facts relating to the IBC-2000, we're talking about facts relating to the preparation of those three drafts.

THE COURT: I understood Mr. Holt's concern to be that there had not been that kind of disclosure with respect to the legacy codes.

MR. HOLT: We didn't get it, Your Honor. On legacy codes, we have gotten none of the underlying code development documents, none.

THE COURT: And I'm not concerned about that. What about the drafts?

MR. HOLT: The drafts, the antecedent drafts for the

22

IBC-2000?

THE COURT: Yes.

MR. HOLT: Yes, we have the identity. But we're going to get down to this mettlesome discussion about who is an employee. If they turn around and say: "Oh, by the way, to the extent that the legacy code is incorporated in by reference into the 460, and, again, Susan Smith was the author," we don't know who she is, we haven't had a chance to depose her, they should not be allowed to put forward any purported employees other than individuals specifically named in the answers to interrogatories in this case.

THE COURT: That's my understanding.

MR. HOLT: Thank you, Your Honor.

THE COURT: All right. How much time do we need to get a motion or cross motions for summary judgment on file?

MR. HAMILTON: Well, there is, there is one aspect that I think the Court should consider.

THE COURT: Okay.

MR. HAMILTON: We had noticed the deposition of Mr. Coffel.

MR. HOLT: We'll make him available at your convenience.

MR. HAMILTON: Okay.

THE COURT: All right.

MR. HAMILTON: Do we have a date, Wendy?

MS. MC GRAW: We do not have a date.

MR. HOLT: Thank you, Your Honor.

THE COURT: All right. Now, do I need to set a date, or do you have one already set?

MR. HAMILTON: Judge, may I raise one other issue --

THE COURT: Okay.

MR. HAMILTON: -- that Ms. McGraw suggests that I call to the Court's attention? I believe our stipulation would be that we would not refer to any staff employees that were not identified in interrogatory answers or otherwise identified in discovery.

Some of the discovery we submitted may have referenced some employees, volunteers, staff people that somehow were not in the answers to interrogatories. So I think I would like to reserve the right if we've already identified in discovery one way or another to be able to refer to them.

THE COURT: My understanding is that what we're talking about here with respect to the stipulation is simply that the plaintiff agrees that the process it used in creating the IBC-2000 was the same process that the legacy codes used.

MR. HAMILTON: Yes.

THE COURT: So that it's not going to come along and say: Hey, guess what, there is this individual we've never mentioned before who was involved in one of the legacy codes, and that person was our employee.

MR. HAMILTON: That's correct, that correct.

31

THE COURT: That's not going to happen.

MR. HAMILTON: That's correct.

MR. HOLT: It's only going to be the list of employees they have identified so far, authors.

THE COURT: The individuals that have been identified so far that all relate as I understand it to IBC-2000 or the three preliminary drafts.

MR. HAMILTON: The point I was making is that in some of the documents we've submitted, sent in those 22 boxes there might be an individual whose name we missed when we --

THE COURT: But the name of an individual, if that person was related to the drafting of IBC-2000 or the preliminary drafts, that's fair game.

MR. HAMILTON: Okay.

THE COURT: To the extent that this individual might have something to do with one of the legacy codes --

MR. HAMILTON: Understood and agreed, Your Honor.

THE COURT: All right.

MR. HOLT: Well, if there are new names that somehow start to surface, and we haven't heard them, we haven't taken their deposition, Your Honor, we would have to take that up on motion then.

THE COURT: I'm going to allow you to take it up by motion.

MR. HOLT: Thank you.

# Exhibit U

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5610 | **DATE** | 12/10/2004 |
| **CASE TITLE** | International Code Council, Inc. vs. National Fire Protection Association | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff has stipulated in court that the process for creating the "legacy codes" was the same as the process for creating the IBC 2000 and its three preliminary drafts. Accordingly, the court will not require production by Plaintiff of the names of individuals involved in the drafting of the legacy codes or source documents, to the extent they have not already been identified. Plaintiff represents that it will identify, on or before February 4, 2005, any code provisions as to which it withdraws its claim of infringement. Defendant's motion for summary judgment, if any to be filed on or before February 28, 2005; Plaintiff's response is due on or before April 5, 2005; reply, if any, April 26, 2005.

11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | ɪɔ | |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | DEC 1 3 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 61 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | 12/10/2004 | |
| | | | | date mailed notice | |
| ETV | courtroom deputy's initials | 2004 DEC 10 PM 3: 23 | | ETV | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

Exhibit 1

(Reserved for use by the Court)

## ORDER

Plaintiff has stipulated in court that the process for creating the "legacy codes" was the same as the process for creating the IBC 2000 and its three preliminary drafts. Accordingly, the court will not require production by Plaintiff of the names of individuals involved in the drafting of the legacy codes or source documents, to the extent they have not already been identified.

Plaintiff's motion for leave to amend (40-1) is granted. Plaintiff's motion for an injunction (40-2) is denied. Plaintiff's motion to preclude (44-1) is denied, as the court concludes that Defendant's disclosure of relevant matter by way of its expert report satisfies its obligations to disclose independent sources of the allegedly infringed provisions.

Plaintiff represents that it will identify, on or before February 4, 2005, any code provisions as to which it withdraws its claim of infringement.

Defendant's motion for summary judgment, if any to be filed on or before February 28, 2005; Plaintiff's response is due on or before April 5, 2005; reply, if any, April 26, 2005. The court reminds counsel that it will not entertain a motion for summary judgment absent a representation from counsel that they have, before filing such motion, made a good faith effort to reach a settlement.

# Exhibit V

COPY

## AGREEMENT OF LICENSE OF COPYRIGHT

The **Reedy Creek Improvement District**, a political subdivision of the State of Florida whose mailing address is Post Office Box 10170, Lake Buena Vista Florida 32830-0170 (hereinafter "Reedy Creek"), and the **National Fire Protection Association**, a Massachusetts not for profit corporation whose mailing address is One Batterymarch Park, Quincy, Massachusetts 02269 (hereinafter "NFPA"), for good and valuable consideration do hereby make the following agreements with regard to the licensing of the EPCOT Building Code and ownership of derivative works from that code (the "Agreement").

### 1. Ownership of the EPCOT Building Code

Reedy Creek is the owner of the copyright and all other rights in and to the 1998 EPCOT Building Code (hereinafter the "EPCOT Code"), and all prior editions of that Code.

### 2. License to Use to NFPA

Pursuant to the terms and conditions hereinafter set forth Reedy Creek hereby permits and licenses the NFPA to use the EPCOT Code as a basis of a building code to be developed by the NFPA, entitled and hereinafter referred to as, the "NFPA Building Code".

### 3. Submission to the NFPA Standards Development Process

Reedy Creek acknowledges and specifically licenses and grants permission to allow the EPCOT Code to be submitted to the NFPA, including all staff, volunteers, contractors and agents of the NFPA, for use in the NFPA's standards development process. It is understood that prior to, during and subsequent to the course of this process the EPCOT Code may be reproduced, reprinted, reviewed, disseminated, discussed, criticized, revised, changed, reordered, and in all other ways manipulated as with any other document in accordance with the NFPA standards development process.

### 4. Sale of the EPCOT Code by NFPA

NFPA agrees that prior to, during and subsequent to the NFPA standards development process, it will not seek to sell, otherwise license or vent the EPCOT Code to or for the use of any third parties not directly involved in the NFPA standards development process

CONFIDENTIAL --
OUTSIDE COUNSELS'
EYES ONLY

NFPA-CR 059002

and shall make no other use of the EPCOT Code, except as part of the NFPA standards development process.

## 5. Waiver of Rights

Reedy Creek acknowledges that as a result of the standards development process, the NFPA will develop, adopt and promulgate a document tentatively entitled The NFPA Building Code. Notwithstanding the fact that the EPCOT Code was initially provided to the NFPA, as per section 3 above, for use in the standards development process as the basis of the NFPA Building Code, and that some or all of the NFPA Building Code may be identical to the EPCOT Code, Reedy Creek hereby waives any rights whatsoever that it may have in the NFPA Building Code. Without limiting the generality of the foregoing, Reedy Creek shall not claim any royalty in or other revenue from NFPA's use and distribution of the NFPA Building Code. This waiver is to be read expansively so as to allow the NFPA to have full and complete ownership of the NFPA Building Code, to claim full copyright in that code and to register that copyright on behalf of the NFPA.

## 6. Continued existence of the EPCOT Code

NFPA acknowledges that, notwithstanding its ownership of copyright in the anticipated NFPA Building Code, some or all of that building code may be identical to and directly taken from the EPCOT Code. NFPA therefore acknowledges that notwithstanding anything to the contrary contained in this Agreement, the EPCOT Code shall have a continued existence; it may be revised, amended, changed, and developed by Reedy Creek; and subject to the limitations contained in paragraph 7 herein, the rights which the NFPA may have in the NFPA Building Code shall not interfere with the rights of Reedy Creek in the EPCOT Code, including, without limitation, its copyright in and to the EPCOT Code or the EPCOT Code as revised from time to time.

## 7. License to Reedy Creek to Use Portions of the NFPA Building Code

In the event that NFPA uses the EPCOT Code as intended herein, NFPA hereby grants a license to Reedy Creek to use whatever portions of the NFPA Building Code are taken from or based on the EPCOT Code in all and future editions of the EPCOT Code, in order to continue the development of the EPCOT Code. The rights hereby granted to Reedy Creek, shall be solely for the use of the EPCOT Code as the building code of that jurisdiction, and for distribution within and that jurisdiction. Reedy Creek shall have no

2

CONFIDENTIAL --
OUTSIDE COUNSELS'
EYES ONLY
NFPA-CR 059003

right to sell, license, vend or disseminate any code developed using materials taken from the NFPA Building Code to any third party, or to grant any other party any rights to use the NFPA Building Code or the EPCOT code (including the licensed portions of the NFPA Building Code) in any manner such as would be injurious to the marketing or distribution of the NFPA Building Code by the NFPA. Such license and grant of right to Reedy Creek shall be non-exclusive in perpetuity and without monetary compensation.

## 8. Acknowledgement of Mutual Rights

The parties each hereby warrant that they have all and full rights to make the agreements, acknowledgements, waivers and other transfers and understandings that are set out hereinabove, and the signatories hereto each warrant that they have due authority to make these agreements, acknowledgements, waivers and other transfers and understandings on behalf of the respective parties. Should either party determine that it does not in the future have such rights, it shall notify the other and shall endeavor with all reasonable means to obtain such rights, powers, authorities as are needed to effectuate the purposes hereof.

## 9. Licensed Code

The parties each hereby agree that the license to use the EPCOT Code given in paragraph number one pertains to the 1998 edition of the EPCOT Code.

## 10. Governing Law

This agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of Florida.

## 11. Jurisdiction

Any legal proceding of any nature brought by either party against the other to enforce any right or obligation under this Agreement, or arising out of any matter pertaining to this Agreement, shall be exclusively submitted for trial before the Circuit Court of the Ninth Judicial Circuit in and for Orange County; or if the Circuit Court does not have jurisdiction, then before the United States District Court for the Middle District of Florida (Orlando Division); or if neither of such courts shall have jurisdiction, then before any other court sitting in Orange County, Florida having subject matter jurisdiction. The parties consent and submit to the exclusive jurisdiction of any such court and agree to

CONFIDENTIAL --
OUTSIDE COUNSELS'
EYES ONLY
NFPA-CR 059004

accept service of process outside the State of Florida in any matter to be submitted to any such court pursuant hereto.

## 12. No Implied Waiver

No course of dealing between the parties and their delay in exercising any right, power or remedy conferred hereby or now or hereafter exising at law, in equity, by statute, or otherwise shall operate as a waiver of, or otherwise prejudice, any such right, power or remedy. All waivers, if any, of any or all of the foregoing rights, powers or remedies must be in writing.

## 13. Entire Agreement

This Agreement embodies the entire understanding of the parties hereto, and supersedes all prior discussions, representations, and agreements between the parties hereto, and there are no further or other agreements, representations, or understandings, written or oral, in effect between the parties relating to the subject matter hereof. This Agreement shall not be modified or amended in any respect except by a written agreement executed by or on behalf of the parties hereto, in the same manner as executed herein.

## 14. Assignment

This Agreement or any interest herein or rights hereunder may not be assigned, transferred or conveyed in whole or in part by NFPA without the prior written consent of Reedy Creek, which consent may be withheld or approved in Reedy Creek's sole discretion.

## 15. Indemnity

NFPA shall indemnify, defend and hold harmless Reedy Creek and its Board of Supervisors, officers, directors, agents, employees, representatives, successors and assigns from and against all claims, liabilities, suits, judgments, liens, damages, penalties, fines, interest, costs and expenses (including, without limitation, reasonable attorneys' fees and fees of other professionals) that arise from or relate directly or indirectly to NFPA's use of the NFPA Code or NFPA's failure to perform any of NFPA's obligations imposed hereunder. NFPA's liability and indemnity provided herein shall survive the expiration or sooner termination of this Agreement.

CONFIDENTIAL –
OUTSIDE COUNSELS'
EYES ONLY

4

NFPA-CR 059005

## 16. Promotion

Except as expressly permitted in writing by Reedy Creek, NFPA shall acquire no right under this Agreement to use, and shall not use, the name "Reedy Creek Improvement District" (either alone or in conjunction with or as a part of any other work or name) or any marks of Reedy Creek in any of NFPA's advertising, publicity, or promotion; to express or imply any endorsement of NFPA's services or products; or in any other manner whatsoever (whether or not similar to the uses hereinabove specifically prohibited). Notwithstanding the foregoing, NFPA may use the "Reedy Creek Improvement District" name in a written or oral statement, article or presentation in order to describe the role of the EPCOT Building Code as a base document for the NFPA Building Code.

## 17. No Offer

This document does not constitute an offer by Reedy Creek. When executed by NFPA and delivered to Reedy Creek, it shall constitute an offer by NFPA to Reedy Creek irrevocable for a period of three (3) days after receipt by Reedy Creek, and upon execution by Reedy Creek and delivery to NFPA, shall constitute a binding agreement between the parties.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year below written.

National Fire Protection Association

By: _____

Title: _Sr. V.P. and Gen Counsel_

Date: _June 22, 2000_

Reedy Creek Improvement District

By: _____

Title: _Vice Pres - Admin._

Date: _1/26/00_

ree\vad\agreemts\ntlfire3.rcid

5

CONFIDENTIAL --
OUTSIDE COUNSELS'
EYES ONLY

NFPA-CR 059006

# Exhibit W

# SWIDLER BERLIN LLP

Wendy C. McGraw
Phone 202.945.6958
Fax 202.424.7643
wcmcgraw@swidlaw.com

The Washington Harbour
3000 K Street, N.W., Suite 300
Washington, D.C. 20007-5116
Phone 202.424.7500
Fax 202.424.7647
www.swidlaw.com

February 17, 2005

**BY FACSIMILE AND FIRST-CLASS MAIL**

Thomas F. Holt, Jr., Esq.
Kirkpatrick & Lockhart LLP
75 State Street
Boston, MA 02109-1808

> Re: *International Code Council, Inc., et al. v. National Fire Protection Association, Inc.* (Case No. 02C 5610, N.D. Ill.)

Dear Mr. Holt:

Please be advised that we have made a few corrections to the Chart that was faxed to you on February 9, 2005. The corrections are at line items 93, 94, 167, 230, 420, and 456. In addition, we have also corrected a formatting error, by deleting the first line above item number 5 and the last line of item 75. A copy of the revised Chart is attached.

Please feel free to contact me if you have any questions.

Sincerely,

Wendy C. McGraw

Enclosure

cc: James Hamilton, Esq.
Warren Anthony Fitch, Esq.
Alan S. Wernick, Esq.

---

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| 5 | 3.3.43 | Balcony (Exterior) | IBC 2000 | 1602.1 | Balcony, Exterior | |
| 11 | 3.3.117 | Deck | IBC 2000 | 1602.1 | Deck | |
| 67 | 3.3.521 | Storage (Material) | IBC 2000 | 415.2 | Storage, Hazardous Materials | |
| 74 | 3.3.560.1.1 | Closed System Use (Material) | IBC 2000 | 307.2 | Closed System | |
| 75 | 3.3.560.1.2 | Open System Use (Material) | IBC 2000 | 307.2 | Open System | |
| | A.3.3.560.1.2 | Open System Use (Material) | IBC 2000 | 307.2 | Open System | |
| 80 | 6.3.2.4.2 | High Hazard Level 1 Contents | IBC 2000 | 307.3 | Group H-1 structures | |
| 81 | 6.3.2.4.3 | High Hazard Level 2 Contents | IBC 2000 | 307.4 | Group H-2 structures | except for phrase added by O58-99 |
| 82 | 6.3.2.4.4 | High Hazard Level 3 Contents | IBC 2000 | 307.5 | Group H-3 structures | except for phrase added by O58-99 |
| 83 | 6.3.2.4.5 | High Hazard Level 4 Contents | IBC 2000 | 307.6 | Group H-4 structures | |
| 84 | 6.3.2.4.6 | High Hazard Level 5 Contents | IBC 2000 | 307.7 | Group H-5 structures | |
| 87 | 7.2.7.3 | Structural Elements | IBC 2000 | 713.2 | Protection of structural members | |
| | 7.2.7.4 | Structural Members | IBC 2000 | 713.2.1 | Individual Protection | |
| | 7.2.7.5 | Structural Elements | IBC 2000 | 713.2.2 | Column protection above ceilings | except for change made by FS123-99 |
| | 7.2.7.6 | Structural Elements | IBC 2000 | 713.2.3 | Truss protection | |
| | 7.2.7.10 | Structural Elements | IBC 2000 | 713.2.4 | Attachments to structural members | |
| | 7.2.7.11 | Structural Elements | IBC 2000 | 713.3 | Embedments and enclosures | |
| | 7.2.7.12 | Structural Elements | IBC 2000 | 713.4 | Impact protection | |
| | 7.2.7.7 | Structural Elements | IBC 2000 | 713.5 | Exterior structural members | |
| | 7.2.7.8 | Structural Elements | IBC 2000 | | | |
| | 7.2.7.9 | Structural Elements | IBC 2000 | | | |
| 88 | Table 7.4.1 | Height & Area Requirements | | | | |
| 89 | | | IBC 2000 | Table 503 | Allowable Height & Building Areas | |
| 90 | 7.4.1.3.4 | Airport Traffic Control Towers | IBC 2000 | 412.1 | Airport Traffic Control Towers | |
| | 7.4.1.3.4.1 | Airport Traffic Control Towers | IBC 2000 | 412.1.1 | General | |
| 91 | Table 7.4.1.3.4.1 | Height & Area Requirements for Airport Traffic Control Tower | IBC 2000 | Table 412.1.2 | Height and Area Limitations for Airport Traffic Control Towers | |
| 92 | 7.4.2.2 | Basements | IBC 2000 | 506.1.1 | Basements | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | Section # | ICC Work Title | Comments |
|---|---|---|---|---|---|---|
| 95 | 7.4.3.6.7.1 | | IBC 2000 | 508.5 | Parking beneath Group R | |
| | 7.4.3.6.7.2 | | IBC 2000 | 508.5 | Parking beneath Group R | |
| 96 | 7.4.3.6.8 | Open Parking Structure Beneath Other Occupancies | IBC 2000 | 508.8 | Open parking garage beneath Groups A,I,B,M and R | |
| | 7.4.3.6.8.1 | Limitations | IBC 2000 | 508.8.1 | Fire separation | |
| | 7.4.3.6.8.2 | Fire Separation | | | | |
| | 7.4.3.6.8.3 | Type of Construction | | | | |
| | 7.4.3.6.8.4 | Means of Egress | | | | |
| 97 | 7.6.2.1.2 | The width limit | IBC 2000 | 506.2.1 | Width limits | |
| | 7.6.2.1.3 | The width limit | IBC 2000 | | | |
| 98 | 7.6.2.2 | Automatic Sprinkler Increase | IBC 2000 | 506.3 | Automatic sprinkler system increase | |
| 99 | 7.6.3.2.1 | | IBC 2000 | 507.2 | Sprinklered, one-story | |
| | 7.6.3.2.2 | | | | | |
| | 7.4.3.6.4 | Rack Storage Buildings | | | | |
| 100 | 7.6.3.8 | Motion Picture Theaters | IBC 2000 | 507.8 | Motion picture theaters | |
| 101 | 7.6.3.7 | Educational Buildings | IBC 2000 | 507.7 | Group E buildings | |
| 102 | 7.6.3.6 | High Hazard Uses in Storage and Industrial Occupancies | IBC 2000 | 507.5 | High-hazard use groups | |
| | 7.6.3.6.1 | | | | | |
| | 7.6.3.6.2 | | | | | |
| | 7.6.3.6.3 | | | | | |
| 103 | 7.6.3.5 | Reduced Open Space | IBC 2000 | 507.4 | Reduced open space | |
| 104 | 7.6.3.3 | Sprinklered, One-or Two-Story Storage Building | IBC 2000 | 507.3 | Two- story | |
| | 7.6.3.4 | Two-Story Building | | 507.3 | Two- story | |
| 105 | 8.2.2.4.3 | | IBC 2000 | 703.2.1 | Nonsymmetrical wall construction | |
| 106 | 8.2.2.4.4 | | IBC 2000 | 704.5 | Fire-resistance ratings | |
| | 8.2.2.4.5 | | | | | |
| 107 | 8.3.3.2 | | IBC 2000 | 705.8 | Openings (exception 2 only) | |
| 112 | 8.8.8.4 | Access and Identification | IBC 2000 | 715.4 | Access and Identification | |
| 114 | 8.9.2 | Joint System Required | IBC 2000 | 712.1 | General | |
| 115 | 8.9.3 | Exterior Curtain Walls and the Perimeter Joint | IBC 2000 | 712.4 | Exterior curtain wall/floor intersection | |
| | 8.9.3.2 | | | | | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | NFPA 5000 Title | | ICC Work Section # | ICC Work Title | Comments |
|---|---|---|---|---|---|---|
| | 8.9.3.2.1 | | | | | |
| | 8.9.3.2.2 | | | | | |
| | 8.9.3.2.3 | | | | | |
| | 8.9.3.3. | | | | | |
| 118 | 8.14.2.3 | Fireblocks | IBC 2000 | 716.2.1 | Fireblocking materials | |
| | 8.14.2.5 | | | | | |
| 119 | 8.14.3 | Combustibles in Concealed Spaces | IBC 2000 | 716.5 | Combustibles in concealed spaces in Types I and II construction | |
| 120 | 8.16.2.1 | Insulating Materials | IBC 2000 | 718.2 | Concealed installation | |
| | 8.16.2.2 | | | 718.2.1 | Facings | |
| | 8.16.3.1 | General | | 718.3 | Exposed installation | |
| | 8.16.3.2.1 | | | 718.3.1 | Attic floors | |
| | 8.16.5 | Loose-Fill Insulation | | 718.4 | Loose-fill insulation | |
| 121 | 8.16.6 | Cellulose Loose-Fill Insulation | IBC 2000 | 718.6 | Cellulose loose-fill insulation | |
| | 8.16.7 | Insulation and Covering on Pipe and Tubing | IBC 2000 | 718.7 | Insulation and covering on pipe and tubing | |
| 165 | 17.3.5.1 | | IBC 2000 | 903.2.2 | Group E | |
| | 17.3.5.4 | | | | | |
| 168 | 27.4.4.9 | Fire Department Access to Equipment | IBC 2000 | 402.15 | Fire department access to equipment | |
| 169 | 27.4.4.11 | Plastic Signs | IBC 2000 | 402.14 | Plastic Signs | |
| 170 | 29.3.5.1 | Fire Sprinklers | IBC 2000 | 903.2.3 | Group F-1 | |
| 171 | 27.3.5.1 | | IBC 2000 | 903.2.6 | Group M | |
| 172 | 30.3.5.1 | General | IBC 2000 | 903.2.10 | Group S-1 | |
| 176 | 34.1.1 | Applicability | IBC 2000 | 307.9 | Exceptions | |
| 178 | T34.1.3.1 | (Table) Maximum Allowable Quantity of Hazardous Materials per Control Area | | | | |
| 179 | | | IBC 2000 | T307.7(1) | Maximum Allowable Quantity Per Control Area of Hazardous Materials Posing A Physical Hazard | |
| 180 | 34.1.3.2.3.1 | Maximum Allowable Quantity increase for Mercantile and Storage Occupancies | IBC 2000 | 414.2.4 | Hazardous material in Group M display and storage areas and in Group S storage areas | |
| 181 | 34.2.4 | Control Areas | IBC 2000 | 414.2 | Control Areas | |
| | 34.2.4.1 | Construction Requirements | | 414.2.1 | Construction Requirements | |
| | 34.2.4.2 | Number | | 414.2.2 | Number | |
| | 34.2.4.3 | Separation | | 414.2.3 | Separation | |

Page 3 of 16

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | NFPA 5000 Title | | ICC Work | ICC Work Section # | ICC Work Title | Comments |
|---|---|---|---|---|---|---|---|
| 182 | T34.2.4.2 | Design and Number of Control Areas | | IBC 2000 | 414.2.2 | (table) Design and Number of Control Areas | |
| 183 | 34.2.5 | Weather Protection | | IBC 2000 | 414.6.1 | Weather Protection | |
| 184 | 34.3.2.6 | Ventilation | | IBC 2000 | 414.3 | Ventilation | |
| | 34.3.2.6.1 | | | | | | |
| | 34.3.2.6.7 | | | | | | |
| | 34.3.2.6.8 | | | | | | |
| | 34.3.2.6.9 | | | | | | |
| | 34.3.2.6.10 | | | | | | |
| | 34.3.2.6.12 | | | | | | |
| | 34.3.2.6.13 | | | | | | |
| 190 | 34.3.2.8 | Standby and Emergency Power | | IBC 2000 | 414.5.4 | Standby or emergency power | |
| | 34.3.2.8.1 | | | | | | |
| 199 | 34.3.2.11 | Floors in Storage Rooms | | IBC 2000 | 415.4.1 | Floors in storage rooms | |
| 200 | 34.3.2.11 | Floors in Storage Rooms | | IBC 2000 | 415.8.2 | Floors in storage rooms | |
| 202 | 34.3.3.2 | Detached Building Required | | IBC 2000 | 415.4 | Special provisions for Group H-1 occupancies | |
| | 34.3.4.4 | Detached Building Required | | | | | |
| | 34.3.4.4.1 | | | | | | |
| | 34.3.4.4.2 | | | | | | |
| | 34.3.5.4 | Detached Building Required | | | | | |
| | 34.3.5.4.1 | | | | | | |
| | 34.3.5.4.2 | | | | | | |
| 203 | 34.3.3.3 | Minimum Distance to Property Lines | | IBC 2000 | 415.3.1 | Group H minimum distance to lot lines | except exception added to IBC by O232-99 |
| | 34.3.3.1 | | | | | | |
| | 34.3.4.3 | Minimum Distance to Property Lines | | | | | |
| | 34.3.4.3.1 | | | | | | |
| | 34.3.4.3.2 | | | | | | |
| | 34.3.5.3 | Minimum Distance to Property Lines | | | | | |
| | 34.3.5.3.1 | | | | | | |
| | 34.3.5.3.2 | | | | | | |
| 206 | 34.3.6.2 | Highly Toxic Solids and Liquids | | IBC 2000 | 415.8.3 | Separation - highly toxic solids and liquids | |
| 208 | 34.3.7.1.2 | Transporting Hazardous Production Materials to Fabrication Areas | | IBC 2000 | 415.9.2.7 | Transporting hazardous production materials to fabrication areas | |
| | 34.3.7.1.2.1 | | | | | | |
| 209 | 34.3.7.1.2.2 | | | IBC 2000 | 415.9.3 | Exit access corridors | |
| 210 | 34.3.7.2.1 | Fabrication Areas | | IBC 2000 | 415.9.2 | Fabrication areas | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| | | | IBC 2000 | 415.9.2.1 | Hazardous materials in fabrication areas | |
| | 34.3.7.2.1.2 | Hazardous Materials Quantity Limits | IBC 2000 | 415.9.2.1.1 | Aggregate quantities | |
| | | | IBC 2000 | 415.9.2.1.2 | Hazardous production materials | |
| | 34.3.7.2.1.3 | Fire-resistive Separation | IBC 2000 | 415.9.2.2 | Separation | |
| | 34.3.7.2.1.4 | Floors | IBC 2000 | 415.9.2.4 | Floors | |
| | 34.3.7.2.1.5 | Vertical Openings | IBC 2000 | 415.9.2.5 | Shafts and openings through floors | |
| 211 | T34.3.7.2.1.2 | Quantity Limits for Hazardous Materials in a Single Fabrication Area | IBC 2000 | T415.9.2.1.1 | Quantity Limits for Hazardous Materials in a Single Fabrication Area in Group H-5 | |
| 213 | 34.3.7.2.4 | Storage Areas for Hazardous Production Materials | IBC 2000 | 415.9.5 | Storage of hazardous production materials. | |
| | 34.3.7.2.4.1 | General | IBC 2000 | 415.9.5.1 | General | |
| 218 | 34.3.7.3.1.2 | Location of HPM Supply Piping and Tubing in Service Corridors | IBC 2000 | 415.6.2.2 | Location in service corridors | |
| 219 | 34.3.7.3.1.3 | Installation of HPM Piping and Tubing in Exit Access Corridors and Above Other Occupancies | IBC 2000 | 415.9.6.3 | Installations in exit access corridors and above other occupancies | except last sentence of 34.3.7.3.1.3 and exception to IBC 415.9.6.3 |
| 220 | 34.3.7.3.2 | Electrical Equipment in Fabrication Areas | IBC 2000 | 415.9.2.8 | Electrical | except NFPA 35.3.7.3.2(C) and last sentence of IBC 415.9.2.8.1 |
| | | | | 415.9.2.8.1 | General | |
| | | | | 415.9.2.8.2 | Workstations | |
| 221 | 34.3.7.3.3 | Ventilation Systems | IBC 2000 | 415.9.2.6 | Ventilation (opening paragraph) | |
| | 34.3.7.3.3.1 | General (opening paragraph and (B)) | | | | |
| 225 | 34.3.7.3.7 | Emergency Power System | IBC 2000 | 415.9.10 | Emergency power system | |
| 228 | 35.1.2.6 | In-site Load Tests | IBC 2000 | 1604.6 | In-site load tests | |
| | 35.1.2.6.1 | | | | | |
| | 35.1.2.6.2 | | | | | |
| 229 | 35.1.2.7 | Preconstruction Load Tests | IBC 2000 | 1604.7 | Preconstruction load tests | |
| 230 | 35.1.2.8 | Deflections | IBC 2000 | 1604.3.1 | Deflections | |
| | 35.1.2.8.1 | General | IBC 2000 | | | |
| | 35.1.2.8.1.1 | | | | | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | NFPA 5000 Title | | | ICC Work Section # | ICC Work Title | Comments |
|---|---|---|---|---|---|---|---|
| | 35.1.2.8.2 | Reinforced Concrete | IBC 2000 | | 1604.3.2 | Reinforced concrete | |
| | 35.1.2.8.3 | Steel | IBC 2000 | | 1604.3.3 | Steel | |
| | 35.1.2.8.4 | Masonry | IBC 2000 | | 1604.3.4 | Masonry | |
| 231 | T35.1.2.8.1.1 | Deflection Limits | IBC 2000 | | t1604.3 | Deflection Limits | except changes made by S16-99 |
| 238 | 35.4 | Construction Documents | IBC 2000 | | 1603.1 | General | except exceptions to IBC 1603.1 |
| | 35.4.1 | General | | | | | |
| | 35.4.2 | Structural Design Information Required | | | 1603.1.1 | Floor live load | |
| | 35.4.2.1 | Floor Live Load | | | 1603.1.2 | Roof live load | |
| | 35.4.2.1.1 | | | | 1603.1.3 | Roof snow load | |
| | 35.4.2.1.2 | | | | | | |
| | 35.4.2.2 | Roof Live Load | | | 1603.1.12 | Roof Live Load | |
| | 35.4.2.3 | Snow Load | | | | | |
| | 35.4.2.3.1 | | | | | | |
| | 35.4.2.3.2 | | | | | | |
| 239 | 35.4.2.4 | Wind Load | IBC 2000 | | 1603.1.4 | Wind load | |
| | 35.4.2.5 | Earthquake Design Data | | | 1603.1.5 | Earthquake design data | |
| | 35.4.2.6.2 | Flood loads | | | 1603.1.6 | Flood load | |
| | 35.4.2.6 | Other loads | | | 1603.1.7 | Special loads | |
| | 35.4.2.6.1 | Special Loads | | | 1603.17 | Special loads | |
| 243 | 35.6.4 | Truck and Bus Garages | IBC 2000 | | 1607.6 | Truck and bus garages | |
| | 35.6.4.1 | | | | | | |
| | 35.6.4.2 | | | | 1607.6.1 | Truck and bus garage live load application | |
| | 35.6.5.2.1 | | | | | | |
| | 35.6.4.2.2 | | | | | | |
| | 35.6.4.2.3 | | | | | | |
| | 35.6.4.2.4 | | | | | | |
| | T35.6.4.1 | Uniform and Concentrated Loads | | | T1607.6 | Uniform and Concentrated Loads | |
| 245 | 35.7 | Roof Loads | IBC 2000 | | 1607.11 | Roof loads. | |
| | 35.7.1 | General | | | | | |
| | 35.7.1.1 | | | | | | |
| | 35.7.1.2 | | | | | | |
| | 35.7.1.2.1 | | | | 1607.11.1 | Distribution of roof loads | |
| 246 | 35.7.4 | Special-Purpose Roofs | IBC 2000 | | 1607.11.2.2 | Special-purpose roofs | |
| | 35.7.4.3 | | | | | | |
| | 35.7.4.1 | | | | 1607.11.2.3 | Landscaped roofs | |
| | 35.7.4.1.1 | | | | | | |
| | 35.7.4.1.2 | | | | | | |
| | 35.7.4.2 | | | | 1607.11.2.4 | Awnings and canopies | |
| 260 | T35.11 | Soil Lateral Load | | | | | |
| 261 | | | IBC 2000 | | T1610.1 | Soil Lateral Load | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| 262 | 36.2.4 | Fill | IBC 2000 | 1803.4 | Compacted fill material | |
| | 36.2.4.1 | | | | | |
| | 36.2.4.3 | | | | | |
| | 36.2.4.3.1 | | | | | |
| | 36.2.4.3.2 | | | | | |
| 266 | T36.6.2.2(a) | Plain Masonry and Plain Concrete Foundation Walls | IBC 2000 | T1605.6(1) | Plain masonry and plain concrete foundation walls | except footnote (b) to the IBC table |
| 269 | 36.6.2.3 | Thickness Based on Walls Supported | IBC 2000 | 1805.5.1.1 | Thickness based on walls supported | |
| | 36.6.2.3.1 | | | | | |
| | 36.6.2.3.2 | | | | | |
| 270 | 36.6.2.4 | Thickness Based on Soil Loads, Unbalanced Backfill Height, and Wall Height | IBC 2000 | 1805.5.1.2 | Thickness based on soil loads, unbalanced backfill height and wall height | |
| 271 | 36.6.2.5 | Rubble Stone | IBC 2000 | 1805.5.1.3 | Rubble stone | |
| 272 | 36.6.2.6 | Foundation Walls | IBC 2000 | 1805.5.2 | Foundation wall materials | |
| 273 | 36.6.2.7 | Alternative Concrete or Masonry Foundation Wall Reinforcement | IBC 2000 | 1805.5.3 | Alternative foundation wall reinforcement | |
| 274 | 36.6.3 | Foundation Plate or Sill Bolting | IBC 2000 | 1805.6 | Foundation plate or sill bolting | |
| 275 | 36.6.4 | Masonry Pier and Curtain Wall Foundations | IBC 2000 | 1805.5.6 | Pier and curtain wall foundations | |
| | 36.6.4.1 | | | | | |
| 277 | 37.2.2.3 | Combustible Construction | IBC 2000 | 1406.3 | Balconies and similar projections | |
| 278 | 37.3.1.1 | | IBC 2000 | 1403.2 | Weather Protection | |
| 279 | 37.3.2 | Flashing | IBC 2000 | 1405.3 | Flashing | |
| | 37.3.3 | Exterior Wall Pockets | | 1405.3.1 | Exterior wall pockets | |
| | 37.3.4 | Masonry | | 1405.3.2 | Masonry | |
| 282 | T38.2.3 | Minimum Roof Covering Classification | IBC 2000 | T1505.1(a)(b) | Minimum Roof Covering Classification for Types of Construction | except footnotes to Table |
| 297 | 40.3.4 | Inspection of Fabricators | IBC | 1704.2 | Inspection of fabricators | |
| | 40.3.4.1 | Prefabrication Inspection | IBC | 1704.2.1 | Fabrication and implementation procedures | |
| 298 | 40.5.2 | Density | IBC | 1704.11.4 | Density | |
| | 40.5.2.1 | | IBC | | | |
| | 40.5.2.2 | | IBC | | | |
| | 40.5.3 | Bond Strength | IBC | 1704.11.5 | Bond Strength | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| | 40.5.3.1 | | | | | |
| | 40.5.3.2 | | | | | |
| | 40.5.3.2.1 | | IBC | 1704.11.5.1 | Floor, roof and wall assemblies | |
| | 40.5.3.2.2 | | IBC | 1704.11.5.2 | Structural framing members | |
| 300 | 41.6 | Slab-on-Ground | IBC | 1911.1 | General | |
| | 41.6.1 | Durability | | | | |
| | 41.6.2 | Minimum Thickness | | | | |
| | 41.6.3 | Vapor Retarder | | | | |
| | 41.6.3.1 | | | | | |
| | 41.6.3.2 | | | | | |
| | 41.6.3.3 | | IBC | | Exception | |
| 301 | 41.7.1 | General | IBC | 1914.1 | General | |
| 302 | 43.6.1 | Second-Hand Units | IBC | 2103.6 | Second-hand Units | |
| | 43.6.1.1 | | | | | |
| | 43.6.1.2 | | | | | |
| | 43.6.1.3 | | | | | |
| 303 | 43.7.1 | | IBC | 2104.1.2.1.1 | Open-end Units | |
| | 43.7.2 | | | | | |
| | 43.7.3 | | | | | |
| | 43.7.4 | | | | | |
| 311 | 44.5 | Steel Storage Racks | IBC | 2210 | Steel Storage Racks | |
| | 44.5.1 | | | 2210.1 | Storage racks | |
| | 44.5.2 | | | | | |
| | 44.5.3 | | | | | |
| 316 | 44.8.1.1 | Design Shear Value Determination | IBC | 2211.6 | Design share determination | |
| | 44.8.1.1.1 | | | | | |
| | 44.8.1.1.2 | | | | | |
| 317 | 44.8.1.2 | Limitations for Systems in Table 44.8.1(a), Table 44.8.1(b), and 44.8.1(c) | IBC | 2211.2.1 | Limitations for systems in Table 2211.1(1), 2211.1(2) and 2211.1(3) | |
| 320 | 44.8.1.2.3 | Gypsum Board Panel Sheathing | IBC | 2211.4 | Gypsum Board Panel Sheathing | |
| | | | | 2211.4.1 | Shear Values | |
| | | | | 2211.4.2 | Orientation | |
| | | | | 2211.4.3 | Attachment | |
| 321 | 44.8.3 | Seismic Design Categories D, E, and F | IBC | 2211.7 | Seismic Design Category D, E or F | |
| | 44.8.3.1 | General | IBC | | | |
| | 44.8.3.1.1 | | | | | |
| | 44.8.3.1.2 | | IBC | 2211.7.1 | Boundary Elements | |
| | 44.8.3.2 | Connections | IBC | 2211.7.2 | Connections | |
| | 44.8.3.3 | Anchorage of Braced Wall segments | IBC | 22117.3 | Braced Bay Members | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| | 44.8.3.5 | Wood Structural Panel Sheathing | IBC | 2211.7.4 | Wood Structural Panel Sheathing | |
| | 44.8.3.6 | Diagonal Bracing | IBC | 2211.7.5 | Diagonal Bracing | |
| 322 | 45.2.1 | Accreditation Body | IBC | 2302.1 | Accreditation Body | |
| 323 | 45.2.2 | Fiberboard | IBC | 2302.1 | Fibreboard | |
| 325 | 45.2.4 | Lumber (Grade) | IBC | 2302.1 | Grade (Lumber) | |
| 326 | 45.2.5 | Nominal Size (Lumber) | IBC | 2302.1 | Nominal Size (Lumber) | |
| 328 | 45.2.6.3 | Plywood Wood Structural Panel | IBC | 2202.1 | Plywood | |
| 329 | 45.2.6 | Panel, Wood Structural | IBC | 2202.1 | Wood Structural Panel | |
| 330 | 45.2.7 | Particleboard | IBC | 2202.1 | Particleboard | |
| 331 | 45.2.5 | Structural Glued Laminated Timber | IBC | 2202.1 | Structural Glued Laminated Timer | |
| 332 | 45.2.9.1 | Fire Retardant - Treated Wood | IBC | 2303.2 | Fire-retardant-treated wood | |
| 335 | 45.5.2 | Lumber Identification | IBC | 2303.1.1 | Lumber | |
| | 45.5.4 | End-jointed Lumber | | | | |
| 336 | 45.5.3.1 | | IBC | 2301.3 | Nominal sizes | |
| 337 | 45.5.5 | Prefabricated Wood I-joists | IBC | 2303.1.2 | Prefabricated wood I-joists | |
| | 45.5.6 | Structural Glued Laminated Timber | IBC | 2303.1.3 | Structural Glued Laminated Timer | |
| 338 | 45.5.7 | Wood Structural Panels | IBC | 2303.1.4 | Wood structural Panel | |
| | 45.5.7.1 | | | | | |
| | 45.5.7.2 | | | | | |
| | 45.5.7.3 | | | | | |
| | 45.5.7.4 | | | | | |
| 340 | 45.5.9 | Hardboard Products | IBC | 2303.1.6 | Hardboard | |
| | 45.5.9.1 | | | | | |
| | 45.5.9.2 | | | | | |
| | 45.5.9.3 | | | | | |
| | 45.5.9.4 | | | | | |
| | 45.5.9.5 | | | | | |
| 341 | 45.5.10 | Particleboard | IBC | 23031.7 | Particleboard | |
| | 45.5.10.1 | | | | | |
| | 45.5.10.2 | | | | | |
| | 45.5.10.3 | | | | | |
| | 45.5.10.4 | | | 2303.1.7.1 | Floor underlayment | |
| | 45.5.10.5 | | | | | |
| 342 | 45.5.11 | Preservative-treated Wood | IBC | 2303.1.8 | Preservative-treated wood | |
| | 45.5.11.1 | | | | | |
| | 45.5.11.2 | | | 2303.1.8.1 | Identification | |
| | 45.5.11.3 | | | | | |
| | 45.5.11.4 | | | | | |
| | 45.5.11.5 | | | | | |
| | 45.5.11.6 | | | 2303.1.8.2 | Moisture Content | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| 345 | 45.5.15.2 | Strength Adjustments | IBC | 2303.2.2 | Strength adjustments | |
| | 45.5.15.2.1 | | | | | |
| | 45.5.15.2.2 | | | | | |
| 346 | 45.5.15.3 | Exposure to Weather or Damp or Wet Locations | IBC | 2303.2.3 | Exposure to weather | |
| | 45.5.15.4 | Interior Applications | IBC | 2303.2.4 | Interior Applications | |
| | 45.5.15.5 | Moisture Content | IBC | 2303.2.5 | Moisture content | |
| 347 | 45.5.16 | Trusses | IBC | 2303.4 | Trusses | |
| | 45.5.16.1 | | | | | |
| | 45.5.16.2 | | | | | |
| | 45.5.16.3 | | | | | |
| 348 | 45.5.17 | Connectors, Nails, and Staples | IBC | 2303.5 | Test standard for joist hangers and connectors | |
| | 45.5.17.1 | | | | | |
| | 45.5.17.2 | | IBC | 2303.6 | Nails and staples | |
| | 45.5.17.3 | | | | | |
| 349 | 45.6.3 | Size of Structural Members | IBC | 2304.2 | Size of structural members | |
| 350 | 45.6.4 | Wall Framing | IBC | 2304.3 | Wall framing | |
| | 45.6.4.1 | | | | | |
| | 45.6.4.2 | | IBC | 2304.3.1 | Bottom plates | |
| | 45.6.4.3 | | IBC | 2304.3.2 | Framing over openings | |
| 351 | 45.6.4.4 | | IBC | 2304.9.7 | Framing requirements | |
| | 45.6.4.5 | | | | | |
| | 45.6.4.6 | | | | | |
| 352 | 45.6.5.4 | | IBC | 2304.6 | Framing around flues and chimneys | |
| | 45.6.5.5 | | | | | |
| 353 | 45.6.6 | Wall Sheathing | IBC | 2304.6.1.1 | Wood structural panel sheathing | |
| | 45.6.6.1 | | | | | |
| | 45.6.6.2 | | | | | |
| | 45.6.6.3 | | | | | |
| | 45.6.6.4 | | | | | |
| 354 | 45.6.7 | Floor and Roof Sheathing | IBC | 2304.7 | Floor and roof sheathing | |
| | 45.6.7.1 | | | 2304.7.1 | Structural Floor Sheathing | |
| | 45.6.7.2 | | | 2304.7.2 | Structural roof sheathing | |
| 355 | 45.6.8 | Connections and Fasteners | IBC | 2304.9 | Connections and fasteners | |
| | 45.6.8.1 | | | 2304.9.1 | Fastener requirements | |
| | 45.6.8.2 | | | 2304.9.1 | Fastener requirements | |
| | 45.6.8.3 | | | 2304.9.2 | Sheathing Fasteners | |

Case: 1:02-cv-85610 Document #: 78-9 Filed: 02/28/05 Page 53 of 81 PageID #:416

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 | | | ICC Work | | Comments |
|---|---|---|---|---|---|---|
| | Section # | Title | | | Section # | Title | |
| | 45.6.8.4 | | | | 2304.9.3 | Joist hangers and framing anchors | |
| | 45.6.8.5 | | | | 2304.9.4 | Other fasteners | |
| | 45.6.8.6 | | | | 2304.9.5 | Fasteners in preservative-treated and fire-retardant-treated wood | |
| | 45.6.8.7 | | | | 2304.9.5 | Fasteners in preservative-treated and fire-retardant-treated wood | |
| 356 | T45.6.8.2 | General Fastening Schedule | | IBC 2000 | T2304.9.1 | Fastening Schedule | |
| 357 | T45.6.8.2 | (Continued) | | IBC 2000 | T2304.9.1 | (Continued) | |
| 358 | | | | IBC 2000 | T2304.9.1 | (Continued) | |
| 359 | 45.6.9 | Protection Against Decay and Termites | | IBC 2000 | 2304.11 | Protection against decay and termites | |
| | 45.6.9.6 | | | | 2304.11.2 | Wood used above ground | |
| | 45.6.9.6.1 | | | | 2304.11.2 | Wood used above ground | |
| | 45.8.9.6.2 | | | | 2304.11.2 | Wood used above ground | |
| | 45.6.9.6.3 | | | | 2304.11.2.1 | Joists, girders and subfloor | |
| | 45.6.9.6.4 | | | | 2304.11.2.3 | Sleepers and sills | |
| | 45.6.9.6.5 | | | | 2304.11.2.4 | Girder Ends | |
| | 45.6.9.6.6 | | | | 2304.11.2.5 | Wood Siding | |
| | 45.6.9.6.7 | | | | 2304.11.2.5 | Wood Siding | |
| 360 | 45.6.9.6.8 | | | IBC 2000 | 2304.11.2.6 | Posts or columns | |
| | 45.6.9.6.9 | | | | 2304.11.3 | Laminated timbers | |
| | 45.6.9.6.10 | | | | 2304.11.4 | Wood in contact with the ground or fresh water | |
| 361 | 45.6.9.6.11 | | | IBC 2000 | 2304.11.4.1 | Posts or columns | |
| | 45.6.9.6.12 | | | IBC | 2304.11.4.2 | Wood structural members | |
| | 45.6.9.6.14 | | | IBC | 2304.11.7 | Wood used in retaining walls and cribs | |
| | 45.6.9.6.15 | | | IBC | | | |
| 362 | 45.6.9.2 | Naturally durable wood | | IBC 2000 | 2302.1 | Naturally durable wood | |
| 363 | 45.6.10 | Wood Supporting Masonry or Concrete | | IBC 2000 | 2304.12 | Wood supporting masonry or concrete | except exception #3 to IBC 2304.12 and #3 to NFPA 45.6.10 |
| 384 | 45.6.11 | Fiberboard | | IBC 2000 | 2303.1.5.1 | Jointing | |
| | 45.6.11.1 | | | | 2303.1.5.1 | Jointing | |
| | 45.6.11.2 | | | | 2303.1.5.2 | Roof Insulation | |
| | 45.6.11.3 | | | | 2303.1.5.3 | Wall Insulation | |
| | 45.6.11.4 | | | | 2303.1.5.3 | Wall Insulation | |
| | 45.6.11.5 | | | | 2303.1.5.3.1 | Protection | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 | | | ICC Work | | Comments |
|---|---|---|---|---|---|---|
| | Section # | Title | | Section # | Title | |
| | 45.6.11.6 | | | 2303.1.5.4 | Insulating Roof Deck | |
| 369 | 46.5.2 | Hazardous Locations | IBC 2000 | 2406.2 | Hazardous locations | |
| | 46.5.2.1 | | | | | |
| 370 | | continued | | | continued | |
| 371 | 46.5.2.3 | (opening paragraph and items 5-7) | IBC 2000 | 2406.2.1 | Exceptions (opening paragraph and items 5-7) | |
| 372 | 46.5.3 | Fire Department Access Panels | IBC 2000 | 2406.3 | Fire department access panels | |
| | 46.5.3.1 | | | | | |
| | 46.5.3.2 | | | | | |
| 373 | 46.6 | Glass in Handrails and Guards | IBC 2000 | 2407.1 | Materials | |
| | 46.6.1 | | IBC 2000 | 2407.1 | Materials | |
| | 46.6.2 | | IBC 2000 | 2407.1.1 | Loads | |
| | 46.6.3 | | IBC 2000 | 2407.1.2 | Support | |
| | 46.6.4 | | IBC 2000 | 2407.1.3 | Parking garages | |
| 374 | 46.7 | Glazing in Athletic Facilities | IBC 2000 | 2408.1 | General | |
| | 46.7.1 | General | IBC 2000 | 2408.1 | General | |
| | 46.7.2 | Racquetball and Squash Courts | | 2408.2 | Testing | |
| | 46.7.2.1 | | | | | |
| | 46.7.2.2 | | | | | |
| | 46.7.2.3 | | | | | |
| | 46.7.3 | Gymnasiums and Basketball Courts | | 2408.2 | Testing | |
| 375 | 46.10.1 | Glass Sloped 15 Degrees (0.26 rad) or Less from Vertical | IBC 2000 | 2404.1 | Vertical glass | |
| | 46.10.1.1 | | IBC 2000 | 2404.1 | Vertical glass | |
| | 46.10.1.2 | | | 2404.1 | Vertical glass | |
| | 46.10.1.3 | | | 2404.1 | Vertical glass | |
| | 46.10.1.4 | | | 2404.1 | Vertical glass | |
| | 46.10.2 | Glass Sloped More than 15 Degrees (0.26 rad) from Vertical | | 2404.2 | Sloped glass | |
| | 46.10.2.1 | | | 2404.2 | Sloped glass | |
| 376 | 46.10.2.2 | | IBC 2000 | 2404.1 | CONTINUED | |
| | 46.10.2.3 | | IBC 2000 | 2404.2 | CONTINUED | |
| | 46.10.2.4 | | | | | |
| 378 | 46.8.3.6 | | IBC 2000 | 2405.3 | Screening | |
| 379 | 46.9.1 | | IBC 2000 | 2403.3 | Framing | |
| 380 | Table 46.10.1.3 | Factors for Vertical and Sloped Glass (for use with Figure 46.10.1.3 (a) through Figure 46.10.1.3 (1)) | IBC 2000 | Table 2404.1 | Factors for Vertical and Sloped Glass (for use with Figure 2404 (1) through 2404 (12) | |
| 393 | T46.10.2.4 | Factors for Sloped Glass | IBC 2000 | T2404.2 | Factors for Sloped Glass | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | NFPA 5000 Title | | ICC Work | ICC Work Section # | ICC Work Title | Comments |
|---|---|---|---|---|---|---|---|
| 396 | 47.1.5.9.2 | Weather-Exposed Surface | | IBC 2000 | 2602.1 | Weather-Exposed Surfaces | |
| | A.47.1.5.9.2 | | | | | | |
| 397 | 47.2.1.5.2 | Wood Support | | IBC 2000 | 2504.1.1 | Wood framing | |
| | 47.2.1.5.2.1 | | | | | | |
| | 47.2.1.5.2.2 | | | | | | |
| 398 | 47.2 | Gypsum Board and Gypsum Veneer Plaster | | IBC 2000 | 2508.2 | Limitations | |
| | 47.2.1 | General | | | | | |
| | 47.2.1.1 | Exposure to Weather and Water | | | | | |
| | 47.2.1.1.1 | | | | | | |
| | 47.2.1.1.2 | | | | | | |
| 400 | 47.4.3.1.4 | | | IBC 2000 | 2510.5.1 | Support of lath | |
| 401 | 48.2.2 | Light-Diffusing System | | IBC 2000 | 2602.1 | Light-diffusing system | |
| | A48.2.2 | | | | | | |
| 402 | 48.2.3.1 | Thermoplastic Material | | IBC 2000 | | Thermoplastic material | |
| 403 | 48.2.4.1 | Light-Transmitting Plastic Roof Panel | | IBC 2000 | 2602.1 | Light-transmitting Plastic Roof Panels | |
| | A.48.2.4.1 | | | | | | |
| 404 | 48.3.2.3 | | | IBC 2000 | 2603.3 | Surface-burning characteristics | |
| 405 | 48.3.3.4 | | | IBC 2000 | 2603.4.1 | Thermal barrier not required | |
| | | | | | 2603.4.1.2 | Cooler and freezer walls | |
| 406 | 48.3.3.4 | | | IBC 2000 | 2603.4.1.9 | Garage doors | |
| | | | | | 2603.4.1.12 | Interior signs | |
| 407 | 48.4.1 | Exterior walls | | IBC 2000 | 2603.5 | Exterior walls of buildings of any height | |
| | 48.4.1.1 | General | | | 2603.5 | Exterior walls of buildings of any height | |
| | 48.4.1.1.1 | | | | 2603.5 | Exterior walls of buildings of any height | |
| | 48.4.1.1.2 | | | | 2603.5 | Exterior walls of buildings of any height | |
| | 48.4.1.1.3 | | | | 2603.5 | Exterior walls of buildings of any height | |
| | 48.4.1.1.4 | -- | | | 2603.5 | Exterior walls of buildings of any height | |
| | 48.4.1.2 | Fire-rated walls | | | 2603.5.1 | Fire-resistance-rated walls | |
| | 48.4.1.3 | Thermal Barriers | | | 2603.5.2 | Thermal barrier | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| | 48.4.1.6 | Potential Heat Content | | 2603.5.3 | Potential heat | |
| | 48.4.1.6.1 | | | 2603.5.3 | Potential heat | |
| | 48.4.1.6.2 | | | 2603.5.3 | Potential heat | |
| | 48.4.1.6.3 | | | 2603.5.3 | Potential heat | |
| | 48.4.1.4 | Flame Spread and Smoke Developed Index | | 2603.5.4 | Flame spread and smoke-developed index | |
| | 48.4.1.4.1 | | | 2603.5.4 | Flame spread and smoke-developed index | |
| | 48.4.1.4.2 | | | 2603.5.4 | Flame spread and smoke-developed index | |
| | 48.4.1.5 | Wall Assembly Flammability | | 2603.5.5 | Test standard | |
| | 48.4.1.5.1 | | | 2603.5 | Test standard | |
| | 48.4.1.5.2 | | | 2603.5 | Test standard | |
| 408 | 48.4.1.7 | Labeling | IBC 2000 | 2603.5.6 | Label required | |
| | 48.4.1.7.1 | | | 2603.5.6 | Label required | |
| | 48.4.1.7.2 | | | 2603.5.6 | Label required | |
| | 48.4.1.8 | Ignition Characteristics | | 2603.5.7 | Ignition | |
| | 48.4.1.8.1 | | | 2603.5.7 | Ignition | |
| | 48.4.1.8.2 | | | 2603.5.7 | Ignition | |
| | 48.4.1.8.3 | | | 2603.5.7 | Ignition | |
| | 48.4.2 | | | 2603.6 | Roofing | |
| 409 | 48.4.4 | Alternate Testing and Approval | IBC 2000 | 2603.7 | Special approval | |
| | 48.4.4.1 | | | | | |
| | 48.4.4.2 | | | | | |
| | 48.4.4.3 | | | | | |
| | 48.4.4.4 | | | | | |
| 410 | 48.6 | Requirements — Plastic Veneers | IBC 2000 | 2605 | Plastic Veneer | |
| | 48.6.1 | | | 2605.1 | Interior use | |
| | 48.6.2 | | | 2605.2 | Exterior use | |
| | 48.6.3 | | | 2605.2 | Exterior use | |
| 411 | 48.7 | Specific Requirements — Light-transmitting Plastics | IBC 2000 | 2606.1 | General | |
| | 48.7.1 | General | | | | |
| | 48.7.1.3 | | | | | |
| 412 | 48.7.2 | Flammability Specifications | IBC 2000 | 2606.4 | Specifications | |
| 413 | 48.7.3.9 | | IBC 2000 | 2610.8 | Combinations of roof panels and skylights | |
| 414 | 48.7.4.1 | | IBC 2000 | 2606.7 | Light-diffusing systems | |
| 416 | 48.7.4.2 | | IBC 2000 | 2606.7.3 | Size limitations | |
| 417 | 48.7.4.2 | | IBC 2000 | 2606.7.1 | Support | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|
| 418 | 48.7.6 | Light-transmitting Exterior Plastic Wall Panels | IBC 2000 | 2607.1 General | |
| | 48.7.6.1 | | | | |
| | 48.7.6.2 | | | | |
| 419 | 48.7.6.3 | | IBC 2000 | 2607.2 Installation | |
| | 48.7.6.4 | | IBC 2000 | 2607.3 Height limitation | |
| 420 | 48.7.6.5 | | IBC 2000 | 2607.4 Area Limitation and separation | |
| | 48.7.6.5.1 | | | | |
| | 48.7.6.5.2 | | | | |
| | 48.7.6.5.3(2) | | | | |
| 421 | Table 48.7.6.5.1 | Area Limitation and Separation Requirements for Exterior Light-Transmitting Plastic Wall Panels | IBC 2000 | Table 2607.4 Area Limitation and Separation Requirements for Light Transmitting Plastic Wall Panels | |
| 422 | 48.7.6.6 | | IBC 2000 | 2607.5 Automatic sprinkler system | |
| | 48.7.6.7 | | IBC 2000 | 2607.6 Combinations of glazing and wall panels | |
| 423 | 48.7.7 | Light-transmitting Plastic Glazing | IBC 2000 | 2608.1 Buildings of Type VB construction | |
| | 48.7.7.1 | | IBC 2000 | 2608.2 Buildings of other types of construction | |
| | 48.7.7.2 | | | | |
| 424 | 48.7.8.4 | Light-transmitting | IBC 2000 | 2609.4 Area limitations | except NFPA 48.7.8.4.2(3) and exception 3 to IBC 2609.4 |
| | 48.7.8.4.1 | Light-transmitting | | | |
| | 48.7.8.4.2 | Light-transmitting | | | see above |
| 427 | 48.7.10 | Light-transmitting Plastic Covers on Solar Collectors | IBC 2000 | 2606.12 Solar collectors | |
| 430 | 48.8 | Specific Requirements- Plastics Interior Signs | IBC 2000 | Section 2611.1 General | |
| | 48.8.1 | Specific Requirements- Plastics Interior Signs | IBC 2000 | Section 2611.1 General | |
| | 48.8.2 | Specific Requirements- Plastics Interior Signs | IBC 2000 | Section 2611.2 Aggregate area | |

## Comparison of NFPA 5000 with ICC Works

| Page # | NFPA 5000 Section # | Title | | ICC Work Section # | Title | Comments |
|---|---|---|---|---|---|---|
| | 48.8.3 | Specific Requirements-Plastics Interior Signs | IBC 2000 | Section 2611.3 | Maximum area | |
| | 48.8.4 | Specific Requirements-Plastics Interior Signs | IBC 2000 | Section 2611.4 | Encasement | |
| 431 | 48.9 | Specific Requirements-Light-transmitting Plastics used in Greenhouses | IBC 2000 | 2606.11 | Greenhouses | |
| 440 | 49.3.2 | | IBC 2000 | 1204.2 | Natural light | |
| 441 | 49.3.3 | | IBC 2000 | 1204.3 | Artificial light | |
| 442 | 49.4.2 | Airborne Sound Transmission | IBC 2000 | 1206.2 | Air-borne sound | |
| | 49.4.3 | Structure-borne Sound Transmission | | 1206.3 | Structure-borne sound | |
| 452 | 54.4.3 | | IBC 2000 | 3006.4 | Machine rooms and machinery spaces | |
| | 54.4.4 | | | | | |
| 453 | 54.5 | Number of Cars in a Hoistway | IBC 2000 | 3002.2 | Number of elevator cars in a hoistway | |
| | 54.5.1 | | | | | |
| | 54.5.2 | | | | | |
| 454 | 54.7 | Vents Required | IBC 2000 | 3004.1 | Vents Required | |
| 455 | 54.7.1 | Location of Vents | IBC 2000 | 3004.2 | Location of vents | |
| | 54.7.1.1 | | | | | |
| | 54.7.1.2 | | | | | |
| 456 | 54.7.2(B) | Area of Vents | IBC 2000 | 3004.3 | Area of vents | |
| | 54.7(2)(D) | "unless all vents activiate upon the detection..." | | | | |
| | 54.7.3 | Closed Vents | IBC 2000 | 3004.4 | Closed vents | |
| 458 | A.6.1.13.1 | | IBC 2000 | 311.2 | Moderate-hazard storage, Group S-1 | |
| | | | IBC 2000 | 311.3 | Low-hazard storage, Group S-2 | |

# Exhibit X

1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

INTERNATIONAL CODE COUNCIL, INC.,  }

Plaintiff,                          }

v.                                  }Case No.

                                    }02C 5610

                                    }

NATIONAL FIRE PROTECTION             }

ASSOCIATION, INC.                    }

                                    }

Defendant.                          }

Washington, D.C.

Friday, September 3, 2004

The deposition of

RONALD G. NICKSON,

called for oral examination by Counsel for the Plaintiffs, pursuant to notice, held in the law offices of Swidler Berlin Shereff Friedman, LLP, 3000 K Street, NW, Washington, D.C., beginning at 10:00 a.m., before Carol J. Robinson, Registered Professional Reporter and a Notary Public in and for the State of Maryland, when were present:

Ronald G. Nickson                                    September 3, 2004

Washington, DC

2

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS:

SWIDLER BERLIN SHEREFF FRIEDMAN, LLP

BY:  WENDY C. MCGRAW, ESQ.

3000 K Street, NW, Suite 300

Washington, D.C.   20007

(202) 945-6948

ON BEHALF OF THE DEFENDANT:

KIRKPATRICK & LOCKHART LLP

BY:  CHRISTOPHER CENTURELLI, ESQ.

75 State Street

Boston, Massachusetts 02109

(617) 261-3175

On behalf of the Witness:

POWELL GOLDSTEIN FRAZER & MURPHY LLP

BY:  RICHARD A. MEDWAY, ESQ.

1001 Pennsylvania Avenue, NW

Washington, D.C.   20004

(202) 624-7382

Also Present:  William E. Koffel, P.E.

Ronald G. Nickson                                September 3, 2004

Washington, DC

3

C O N T E N T S

EXAMINATION OF RONALD G. NICKSON          Page

By Ms. McGraw                             5, 98, 99

By Mr. Centurelli                            78, 99


E X H I B I T S

(Attached.)

| No. | Description | Page |
|---|---|---|
| 79 | Letter Dated 5-2-00 | 11 |
| 80 | Proposed NFPA 5000 NFPA Building Code | 18 |
| 81 | Memo Dated 6-1-00 | 22 |
| 82 | Document Entitled "Working Paper - NFPA 5000 Master" | 24 |
| 83 | E-Mail Dated 6-9-00 | 25 |
| 84 | Memo Dated 6-30-00 With Attachments | 30 |
| 85 | NFPA Building Code Review Assignments | 32 |
| 86 | Minutes of NFPA Building Code Technical Correlating Committee Dated 7-25-00 | 36 |
| 87 | Manual of Style for NFPA TC Documents April 2000 Edition | 55 |

Ronald G. Nickson

September 3, 2004

Washington, DC

4

E X H I B I T S (Continued)

(Attached.)

| No. | Description | Page |
|-----|-------------|------|
| 89 | E-Mail Dated 5-15-02 | 73 |
| 90 | Article Entitled "Why Choosing the Right Consensus Code Matters" | 84 |
| 91 | Article Entitled "ICC Codes: Why They Deserve Your Support" | 87 |
| 92 | NFPA TCC Membership Application | 94 |

Ronald G. Nickson                                    September 3, 2004
                          Washington, DC

5

Whereupon,

                    RONALD G. NICKSON,

called as a witness, having been first duly sworn

to tell the truth, the whole truth, and nothing

but the truth, was examined and testified as

follows:

          EXAMINATION BY COUNSEL FOR PLAINTIFF

               BY MS. MCGRAW:

     Q        Good morning.

     A        Good morning.

     Q        Could you state your full name for the

record?

     A        Ronald G. Nickson.

     Q        Mr. Nickson, have you had your

deposition taken before?

     A        No.

     Q        My name is Wendy McGraw.  I'm an

attorney for the International Code Council.  This

is a case that is pending in Chicago against the

National Fire Protection Association and it

involves the copyright of the International

Building Code 2000.  And what we'll do today is

Ronald G. Nickson                                    September 3, 2004

Washington, DC

6

ask you a series of questions and we need for you to answer out loud because the court reporter is taking down everything we say.  Okay?

A     Uh-huh.

Q     Try to avoid "uh-huh" and "uh-uh"s because they don't come out well on a transcript, and try to avoid nodding, actually giving a oral response, and try not to speak over me and I'll try to do the same because it is difficult for the court reporter to take down two people talking at the same time okay?

That could be difficult because sometimes you can anticipate exactly what I am going to ask, but it helps if you let me finish the question and then you do your answer.  Okay?

A     All right.

Q     You can take a break at any time. Just let us know.  Can you tell me who you are currently employed by?

A     The National Multi Housing Council.

Q     And what is your position with them?

A     Vice president of building codes.

Ronald G. Nickson

September 3, 2004

Washington, DC

7

Q    How long have you had that position?

A    12 years.

Q    What is your education after high school?

A    I have a degree in industrial construction management from Colorado State University.

Q    Are you a member of NFPA?

A    Yes.

Q    How long have you been a member of NFPA?

A    I am going to guess at that, but I would say ten years.

Q    Are you an individual member of are you a member through NMHC?

A    I'm a member through NMHC.

Q    Are you a member of the International Code Council?

A    Yes.

Q    How long have you been a member of ICC?

A    About 12 years.

Ronald G. Nickson                                          September 3, 2004

Washington, DC

8

Q      That includes membership into the three legacy entities?

A      Yes.  However, I was a membership (sic) of ICC prior to that when I worked for the Homebuilders.

Q      Okay.  Is Homebuilders who you worked for prior to NMHC?

A      Yes.

Q      What was your position with them?

A      Director of home environment.

Q      How long did you hold that position?

A      I had that position for about a year and a half.  I was there for a total of three years.

Q      What was your title with them prior to director of home environment?

A      I was just one of the code engineers.

Q      What has your experience been in participating in the development of model codes?

A      Experience?

Q      How long have you been participating in the development of model codes?

Ronald G. Nickson                                    September 3, 2004

Washington, DC

9

A      My first involvement was probably about -- I have to back up here to when I first got involved. About 1965, '66.

Q      What was that early involvement?

A      I worked for the Brick Institute of America and was their code representative.

Q      What codes did you work on?

A      I worked with all three of the legacy codes at that time.

Q      When you refer to legacy codes, you mean the BOCA, SBCCI and the BOMA codes?

A      Yes.

Q      Have you participated in development of model codes on an ongoing basis since 1965?

A      I worked as a builder for 22 years in Northern Virginia and I was on the Builders' Local Code Committee. So, I was not in the development of model codes but I did work in the code arena at that time.

Q      Other than in 1965, '66 when you worked on the development of model codes, when did you reenter, if you did reenter that forum?

Ronald G. Nickson                                    September 3, 2004
Washington, DC

10

A       1989.

Q       That would have been when you joined Homebuilders?

A       Yes.

Q       And have you consistently worked in the development of model codes since that time?

A       Yes.

Q       And am I correct that you participated in the development of the NFPA 5000?

A       Yes.

Q       That's a building code developed by NFPA?

A       Yes.

Q       What committees did you serve on in connection with the NFPA 5000?

A       I'm on the Residential Technical Committee and the Technical Coordinating Committee, TCC, and later on was appointed to the Building Systems Committee.

Q       When were you appointed to the Building Systems Committee?

A       I don't know the exact date on that.

Ronald G. Nickson

September 3, 2004

Washington, DC

11

It was, I think, after the first run of the code when we started into the second round of hearings. I was on that committee the second round of the hearings.

Q    But that was the before the NFPA 5000 2003 edition was actually published?

A    It was about the time they published that edition that I got appointed to that committee and we got going to the second round of the cycle.

Q    Okay.  I am going to have the court reporter mark an exhibit for us and we are going to pick up at Exhibit 79.

(Deposition Exhibit No. 79, NFPA letter dated May 2, 2000, was marked for identification.)

THE WITNESS:  Might I ask what the role of -- is it --

MS. MCGRAW:  Yeah, why don't you go ahead and just identify yourself for the record?

MR. CENTURELLI:  My name is Chris Centurelli and I'm here on behalf of National Fire

Ronald G. Nickson                                    September 3, 2004
                        Washington, DC

                                                              12

Protection Agency.

        THE WITNESS:  Okay.

        MR. CENTURELLI:  And I'm here with Bill Koffel who is an expert in this case.

        THE WITNESS:  Okay.

        BY MS. MCGRAW:

    Q    Let me show you what we have just marked as Exhibit 79 which has a Bates number NM 00359.  Can you identify that document?

    A    Yes.  It is one that came out notifying what NFPA was going to do.

    Q    This is a letter addressed to you from NFPA dated May 2, 2000.  Is that correct?

    A    Yes.

    Q    And prior to -- first of all, do you recall receiving this letter?

    A    I don't know that I recall specifically that letter.  I recall receiving correspondence from NFPA on the subject.

    Q    Okay.  Prior to the date of May 2, 2000, had you -- did you have any knowledge that NFPA was contemplating developing a building code?

Ronald G. Nickson                                                September 3, 2004

Washington, DC

13

A       I am trying to get dates exact and it is a little difficult.  But because of my involvement in code activity, I was aware of what NFPA was planning on doing.

Q       And what was your reaction when you first learned that NFPA was going to develop a building code?

MR. CENTURELLI:  Objection.

BY MS. MCGRAW:

Q       You can answer.

A       Okay.

MR. MEDWAY:  Yes.  You can answer.

THE WITNESS:  My personal reaction was that I didn't really want NFPA to do that.

BY MS. MCGRAW:

Q       And why was that?

A       We had just completed the process of the three legacy code groups getting together and developing a single set of codes to use throughout this country and I didn't feel we needed another code to compete with.

Q       Did you express that to anyone at

Ronald G. Nickson                                    September 3, 2004

Washington, DC

98

chapters 22 through 25, is that correct?

A    Yes.

MR. CENTURELLI:  Thank you very much. I have no further questions for you today.

MS. MCGRAW:  I just have one follow-up question.

BY MS. MCGRAW:

Q    You were asked a question as to whether the IBC and NFPA 5000 are different codes, and you said yes.  And I just want to understand the testimony, are you testifying that there are no similar provisions or no identical provisions within the two codes?

A    No.

MR. CENTURELLI:  Objection.  Form and foundation.

THE WITNESS:  No.  I was testifying they are different codes in the sense they have different formats, completely different formats on how to set up and put together.  That was not a comment on the technical provisions in the code. There are a lot of similarities in the technical

Ronald G. Nickson September 3, 2004

Washington, DC

99

provisions.

MS. MCGRAW: Nothing further.

MR. CENTURELLI: I just do have some quick questions. I will be quick.

BY MR. CENTURELLI:

Q Are you being paid today by National Multi Housing?

A Yes, I am.

Q To be here?

A Yes.

Q Did you speak with anyone from ICC and in anticipation of your testimony here today?

A No.

Q Did you speak with anyone from the law firm of Swidler Berlin, including Ms. McGraw, prior to your testimony today?

A No.

MR. CENTURELLI: Thank you very much.

MS. MCGRAW: Oh, I have to ask one follow-up.

BY MS. MCGRAW:

Q Your payment by your employer today,

# Exhibit Y

# International Building Code®



INTERNATIONAL CODE COUNCIL®



EXHIBIT
Battles 130
9/16/04



EXHIBIT
Sino
41

# 2000





SBCCI

**TABLE 503**
**ALLOWABLE HEIGHT AND BUILDING AREAS**
Height limitations shown as stories and feet above grade plane.
Area limitations as determined by the definition of "Area, building," per floor.

| GROUP | Hgt(S) | TYPE I A | TYPE I B | TYPE II A | TYPE II B | TYPE III A | TYPE III B | TYPE IV HT | TYPE V A | TYPE V B |
|---|---|---|---|---|---|---|---|---|---|---|
| HGT(feet) | | UL | 160 | 65 | 55 | 65 | 55 | 65 | 50 | 40 |
| A-1 | S | UL | 5 | 3 | 2 | 3 | 2 | 3 | 2 | 1 |
|     | A | UL | UL | 15,500 | 8,500 | 14,000 | 8,500 | 15,000 | 11,500 | 5,500 |
| A-2 | S | UL | 11 | 3 | 2 | 3 | 2 | 3 | 2 | 1 |
|     | A | UL | UL | 15,500 | 9,500 | 14,000 | 9,500 | 15,000 | 11,500 | 6,000 |
| A-3 | S | UL | 11 | 3 | 2 | 3 | 2 | 3 | 2 | 1 |
|     | A | UL | UL | 15,500 | 9,500 | 14,000 | 9,500 | 15,000 | 11,500 | 6,000 |
| A-4 | S | UL | 11 | 3 | 2 | 3 | 2 | 3 | 2 | 1 |
|     | A | UL | UL | 15,500 | 9,500 | 14,000 | 9,500 | 15,000 | 11,500 | 6,000 |
| A-5 | S | UL | UL | UL | UL | UL | UL | UL | UL | UL |
|     | A | UL | UL | UL | UL | UL | UL | UL | UL | UL |
| B | S | UL | 11 | 5 | 4 | 5 | 4 | 5 | 3 | 2 |
|   | A | UL | UL | 37,500 | 23,000 | 28,500 | 19,000 | 36,000 | 18,000 | 9,000 |
| E | S | UL | 5 | 3 | 2 | 3 | 2 | 3 | 1 | 1 |
|   | A | UL | UL | 26,500 | 14,500 | 23,500 | 14,500 | 25,500 | 18,500 | 9,500 |
| F-1 | S | UL | 11 | 4 | 2 | 3 | 2 | 4 | 2 | 1 |
|     | A | UL | UL | 25,000 | 15,500 | 19,000 | 12,000 | 33,500 | 14,000 | 8,500 |
| F-2 | S | UL | 11 | 5 | 3 | 4 | 3 | 5 | 3 | 2 |
|     | A | UL | UL | 37,500 | 23,000 | 28,500 | 18,000 | 50,500 | 21,000 | 13,000 |
| H-1 | S | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | NP |
|     | A | 21,000 | 16,500 | 11,000 | 7,000 | 9,500 | 7,000 | 10,500 | 7,500 | NP |
| H-2 | S | UL | 3 | 2 | 1 | 2 | 1 | 2 | 1 | 1 |
|     | A | 21,000 | 16,500 | 11,000 | 7,000 | 9,500 | 7,000 | 10,500 | 7,500 | 3,000 |
| H-3 | S | UL | 6 | 4 | 2 | 4 | 2 | 4 | 2 | 1 |
|     | A | UL | 60,000 | 26,500 | 14,000 | 17,500 | 13,000 | 25,500 | 10,000 | 5,000 |
| H-4 | S | UL | 7 | 5 | 3 | 5 | 3 | 5 | 3 | 2 |
|     | A | UL | UL | 37,500 | 17,500 | 28,500 | 17,500 | 36,000 | 18,000 | 6,500 |
| H-5 | S | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 |
|     | A | UL | UL | 37,500 | 23,000 | 28,500 | 19,000 | 36,000 | 18,000 | 9,000 |
| I-1 | S | UL | 9 | 4 | 3 | 4 | 3 | 4 | 3 | 2 |
|     | A | UL | 55,000 | 19,000 | 10,000 | 16,500 | 10,000 | 18,000 | 10,500 | 4,500 |
| I-2 | S | UL | 4 | 2 | 1 | 1 | Np | 1 | 1 | NP |
|     | A | UL | UL | 15,000 | 11,000 | 12,000 | Np | 12,000 | 9,500 | NP |
| I-3 | S | UL | 4 | 2 | 1 | 2 | 1 | 2 | 2 | 1 |
|     | A | UL | UL | 15,000 | 11,000 | 10,500 | 7,500 | 12,000 | 7,500 | 5,000 |
| I-4 | S | UL | 5 | 3 | 2 | 3 | 2 | 3 | 1 | 1 |
|     | A | UL | 60,500 | 26,500 | 13,000 | 23,500 | 13,000 | 25,500 | 18,500 | 9,000 |
| M | S | UL | 11 | 4 | 4 | 4 | 4 | 4 | 3 | 1 |
|   | A | UL | UL | 21,500 | 12,500 | 18,500 | 12,500 | 20,500 | 14,000 | 9,000 |
| R-1 | S | UL | 11 | 4 | 4 | 4 | 4 | 4 | 3 | 2 |
|     | A | UL | UL | 24,000 | 16,000 | 24,000 | 16,000 | 20,500 | 12,000 | 7,000 |
| R-2a | S | UL | 11 | 4 | 4 | 4 | 4 | 4 | 3 | 2 |
|      | A | UL | UL | 24,000 | 16,000 | 24,000 | 16,000 | 20,500 | 12,000 | 7,000 |
| R-3a | S | UL | 11 | 4 | 4 | 4 | 4 | 4 | 3 | 3 |
|      | A | UL | UL | UL | UL | UL | UL | UL | UL | UL |
| R-4 | S | UL | 11 | 4 | 4 | 4 | 4 | 4 | 3 | 2 |
|     | A | UL | UL | 24,000 | 16,000 | 24,000 | 16,000 | 20,500 | 12,000 | 7,000 |
| S-1 | S | UL | 11 | 4 | 3 | 3 | 3 | 4 | 3 | 1 |
|     | A | UL | 48,000 | 26,000 | 17,500 | 26,000 | 17,500 | 25,500 | 14,000 | 9,000 |
| S-2 | S | UL | 11 | 5 | 4 | 4 | 4 | 5 | 4 | 2 |
|     | A | UL | 79,000 | 39,000 | 26,000 | 39,000 | 26,000 | 38,500 | 21,000 | 13,500 |
| U | S | UL | 5 | 4 | 2 | 3 | 2 | 4 | 2 | 1 |
|   | A | UL | 35,500 | 19,000 | 8,500 | 14,000 | 8,500 | 18,000 | 9,000 | 5,500 |

For SI: 1 foot = 304.8 mm, 1 square foot = 0.0929 m$^2$.
UL = Unlimited
a. As applicable in Section 101.2.

permitted in lieu of automatic sprinkler protection where recognized by the applicable standard and approved by the building official.

**903.1.2 Residential systems.** Unless specifically allowed by this code, residential sprinkler systems installed in accordance with NFPA 13D or NFPA 13R shall not be recognized for the purposes of exceptions or reductions permitted by other requirements of this code.

**903.2 Where required.** Approved automatic sprinkler systems in new buildings and structures shall be provided in the locations described in this section.

**903.2.1 Group A.** An automatic sprinkler system shall be provided throughout buildings and portions thereof used as Group A occupancies as provided in this section. The automatic sprinkler system shall be provided throughout the floor area where the Group A occupancy is located, and in all floors between the Group A occupancy and the level of exit discharge.

**903.2.1.1 Group A-1.** An automatic sprinkler system shall be provided throughout a fire area containing a Group A-1 occupancy where one of the following conditions exists:

1. The fire area exceeds 12,000 square feet (1115 m²).
2. The fire area has an occupant load of 300 or more.
3. The fire area is located on a floor other than the level of exit discharge.
4. The fire area contains a multi-theater complex.

**903.2.1.2 Group A-2.** An automatic sprinkler system shall be provided throughout a fire area containing a Group A-2 occupancy where one of the following conditions exists:

1. The fire area exceeds 5,000 square feet (465 m²).
2. The fire area has an occupant load of 300 or more.
3. The fire area is located on a floor other than the level of exit discharge.

**903.2.1.3 Group A-3.** An automatic sprinkler system shall be provided throughout a fire area containing a Group A-3 occupancy where one of the following conditions exists:

1. The fire area exceeds 12,000 square feet (1115 m²).
2. The fire area has an occupant load of 300 or more.
3. The fire area is located on a floor other than the level of exit discharge.

**Exception:** Areas used exclusively as participant sports areas where the main floor area is located at the same level as the level of exit discharge of the main entrance and exit.

**903.2.1.4 Group A-4.** An automatic sprinkler system shall be provided throughout a fire area containing a Group A-4 occupancy where one of the following conditions exists:

1. The fire area exceeds 12,000 square feet (1115 m²).
2. The fire area has an occupant load of 300 or more.
3. The fire area is located on a floor other than the level of exit discharge.

**Exception:** Areas used exclusively as participant sport areas where the main floor area is located at the same level as the level of exit discharge of the main entrance and exit.

**903.2.1.5 Group A-5.** An automatic sprinkler system shall be provided in concession stands, retail areas, press boxes, and other accessory use areas in excess of 1,000 square feet (93 m²).

**903.2.2 Group E.** An automatic sprinkler system shall be provided throughout all Group E fire areas greater than 20,000 square feet (1858 m²) in area. An automatic sprinkler system shall also be provided for every portion of educational buildings below the level of exit discharge.

**Exception:** Where each classroom has at least one exterior exit door at ground level.

**903.2.3 Group F-1.** An automatic sprinkler system shall be provided throughout all buildings where the fire area containing a Group F-1 occupancy exceeds 12,000 square feet (1115 m²), or where more than three stories in height, or where the combined fire area on all floors, including mezzanines, exceeds 24,000 square feet (2230 m²).

**903.2.3.1 Woodworking operations.** An automatic sprinkler system shall be provided throughout all Group F-1 occupancy fire areas that contain woodworking operations in excess of 2,500 square feet (232 m²) in area which generate finely divided combustible waste or which use finely divided combustible materials.

**903.2.4 Group H.** Automatic sprinkler systems shall be provided in high-hazard occupancies as required in Sections 903.2.4.1 through 903.2.4.3.

**903.2.4.1 General.** An automatic sprinkler system shall be installed in Group H occupancies.

**903.2.4.2 Group H-5.** An automatic sprinkler system shall be installed throughout buildings containing Group H-5 occupancies. The design of the sprinkler system shall not be less than that required by this code for the occupancy hazard classifications in accordance with Table 903.2.4.2. Where the design area of the sprinkler system consists of a corridor protected by one row of sprinklers, the maximum number of sprinklers required to be calculated is 13.

**TABLE 903.2.4.2**
**GROUP H-5 SPRINKLER DESIGN CRITERIA**

| LOCATION | OCCUPANCY HAZARD CLASSIFICATION |
|---|---|
| Fabrication areas | Ordinary Hazard Group 2 |
| Service corridors | Ordinary Hazard Group 2 |
| Storage rooms without dispensing | Ordinary Hazard Group 2 |
| Storage rooms with dispensing | Extra Hazard Group 2 |
| Corridors | Ordinary Hazard Group 2 |

# Exhibit Z

**2003 EDITION**

# BUILDING CONSTRUCTION AND SAFETY CODE™

## AND SAFETY CODE™

### NFPA 5000™



**NFPA®**
INTERNATIONAL



Comprehensive
Consensus
Codes™

(b) Maintenance shops, including woodworking and painting areas
(c) Rooms or spaces used for processing or use of combustible supplies deemed hazardous by the authority having jurisdiction
(d) Rooms or spaces used for processing or use of hazardous materials or flammable or combustible liquids in quantities deemed hazardous by recognized standards

(3) Where automatic extinguishing is used to meet the requirements of 17.3.2.1(1) or 17.3.2.1(2), the protection shall be permitted to be in accordance with 55.3.1.2.

### 17.3.2.2 Cooking Facilities.

**17.3.2.2.1** Cooking facilities shall be protected in accordance with Section 55.10.

**17.3.2.2.2** Openings shall not be required to be protected between food preparation areas and dining areas.

**17.3.2.3 Laboratories.** Laboratories that use chemicals shall comply with NFPA 45, *Standard on Fire Protection for Laboratories Using Chemicals.*

**17.3.2.4 Stages.** Stages shall be protected in accordance with 16.4.5.

### 17.3.3 Interior Finish.

**17.3.3.1 General.** Interior finish shall be in accordance with Chapter 10.

**17.3.3.2 Interior Wall and Ceiling Finish.** Interior wall and ceiling finish materials in accordance with Chapter 10 shall be permitted as follows:

(1) Exits—Class A
(2) Other than exits—Class A or Class B
(3) Low-height partitions not exceeding 5 ft (1.5 m) used in locations other than exits—Class A, Class B, or Class C

**17.3.3.3 Interior Floor Finish.** Interior floor finish in exit enclosures and in exit access corridors, and in spaces not separated from them by walls complying with 17.3.6, shall be not less than Class II in accordance with 10.6.4. In all other spaces, interior floor finish shall comply with 10.6.1 and 10.6.2.

### 17.3.4 Detection, Alarm, and Communications Systems.

**17.3.4.1 General.** Educational occupancies shall be provided with a fire alarm system in accordance with Section 55.2.

*Exception: The requirement of 17.3.4.1 shall not apply to a building with an area of not more than 1000 ft² (93 m²) that contains a single classroom and is located not closer than 50 ft (15.2 m) from another building.*

### 17.3.4.2 Initiation.

**17.3.4.2.1 General.** Initiation of the required fire alarm system shall be by manual means in accordance with Section 55.2.2.

**17.3.4.2.2 Initiation by Automatic Sprinkler System.** In buildings provided with automatic sprinkler protection, the operation of the sprinkler system shall automatically initiate the fire alarm system in addition to the initiation means required in 17.3.4.2.1.

**17.3.4.2.3 Alternative Protection System.** Manual fire alarm boxes shall be permitted to be eliminated in accordance with 17.3.4.2.3.1 or 17.3.4.2.3.2.

**17.3.4.2.3.1\*** Manual fire alarm boxes shall be permitted to be eliminated where all of the following conditions apply:

(1) Interior corridors are protected by smoke detectors using an alarm verification system as described in *NFPA 72, National Fire Alarm Code.*
(2) Areas such as auditoriums, cafeterias, and gymnasiums are protected by heat or other approved detection devices.
(3) Shops and laboratories involving dusts or vapors are protected by heat or other approved detection devices.
(4) Provision is made at a central point to manually activate the evacuation signal, or to evacuate only affected areas.

**17.3.4.2.3.2\*** Manual fire alarm boxes shall be permitted to be eliminated where all of the following conditions apply:

(1) The building is protected throughout by an approved, supervised automatic sprinkler system in accordance with Section 55.3.
(2) Provision is made at a central point to manually activate the evacuation signal, or to evacuate only affected areas.

### 17.3.4.3 Notification.

### 17.3.4.3.1 Occupant Notification.

**17.3.4.3.1.1\*** Occupant notification shall be accomplished automatically in accordance with 55.2.3. Positive alarm sequence shall be permitted in accordance with 55.2.3.4.

**17.3.4.3.1.2** Where acceptable to the authority having jurisdiction, the fire alarm system shall be permitted to be used for other emergency signaling or for class changes, provided that the fire alarm is distinctive in signal and overrides all other use.

**17.3.4.3.1.3** In order to prevent students from being returned to a building that is burning, the recall signal shall be separate and distinct from, and incapable of being mistaken for, any other signals. Such signal shall be permitted to be a distinctively colored flag or banner. If the recall signal is electrical, the push buttons or other controls shall be kept under lock, the key for which shall be in the possession of the principal or some other designated person to prevent a recall at a time when there is an actual fire. Regardless of the method of recall, the controls for the signal shall be kept under a lock.

**17.3.4.3.2 Emergency Forces Notification.** Fire department notification shall be accomplished in accordance with 55.2.4.

### 17.3.5 Extinguishment Requirements.

**17.3.5.1** Educational occupancy buildings with a fire compartment exceeding 20,000 ft² (1860 m²) shall be protected throughout by an approved, supervised automatic sprinkler system in accordance with Section 55.3.

**17.3.5.2** Fire compartments provided to subdivide the building so as to be exempt from the sprinkler requirement of 17.3.5.1 shall be separated from the rest of the building by fire barrier walls or horizontal assemblies, or both, having a fire resistance rating of not less than 2 hours and shall comply with Chapter 8.

**17.3.5.3** Educational occupancy buildings four or more stories in height shall be protected throughout by an approved, supervised automatic sprinkler system in accordance with Section 55.3.

2003 Edition